PEOPLE ex rel. AMERICAN ICE CO. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Appellate Division, Third Department. November 13, 1912.)

1. TAXATION (§ 349*)—MORTGAGE REGISTRATION TAX—DEDUCTION OF INCUM-
BRANCES.

Tax Law (Consol. Laws 1909, c. 60) § 260, requires the State Board of
Tax Commissioners to determine what proportion of a mortgage ·on real
property located partly within the state and partly without shall be tax-
able, by determining the real value of the property within this state as
compared to the total value of the entire property, taking into considera-
tion the amount of all prior incumbrances upon such property or any
part of it. A mortgagor, in the execution of a trust mortgage purporting
to cover real property both within and outside the state, covenanted
that it would apply the proceeds of the ·bonds, to be secured thereby,
to refunding its indebtedness, and to causing mortgage liens upon its
property to be paid or extinguished, so that the trust mortgage should
become a first lien. Held, that the mortgagor was entitled to have such
incumbrances deducted from the valuation of the real property covered
by the mortgage, in determining the amount of the mortgage registration
tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 590; Dec. Dig.
349.*]

2. TAXATION (§ 348*) — MORTGAGE REGISTRATION TAX — APPORTIONMENT —
LEASEHOLD—"TANGIBLE PROPERTY."

Tax Law (Consol. Laws 1909, c. 60) § 260, provides that in determining
the separate values of the property within and without the state covered
by a mortgage, for the purpose of ascertaining the proportion of the in-
debtedness secured by the mortgage taxable thereunder, the State Board
of Tax Commissioners shall consider only the value of "tangible prop-
erty" covered by each mortgage; section 250 provides that "real prop-
erty" and "real estate" shall include everything a conveyance or mort-
gage of which can be recorded as a conveyance or mortgage of real prop-
erty; section 253 provides that a tax is imposed upon the principal debt,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which, under any contingency, may be secured by a mortgage on real property situated in the state; and Real Property Law (Consol. Laws 1909, c. 50) §§ 33, 290, 291, declares estates for years to be chattels real, and that leases, excepting a lease not exceeding three years, can be recorded. *Held*, that real property was "tangible property"; and that in determining the proportion of such a mortgage of real property to be taxed the value of the mortgagor's leasehold interests in property without the state was to be regarded as "tangible property."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 584-589; Dec. Dig. § 348.*]

3. TAXATION (§ 348*)—MORTGAGE REGISTRATION TAX—APPORTIONMENT.

Tax Law, § 260, provides that when real property covered by a mortgage is located partly within and partly without the state the Board of Tax Commissioners shall determine what proportion shall be taxable by determining the relative value of the property within the state as compared to the total value of the property. A resident ice company, which owned all the capital stock of a company located outside the state, and carried the real estate of such company as its own, and also its stock at a nominal value, and which was the lessee of all its property for one dollar per year, in possession thereof and carrying on its business as its own, though the title actually stood in the name of such other company, executed a trust mortgage of all its real property, wherever situated, and to which it was in any way entitled, or which it might thereafter become entitled to, and covenanted that it would cause all the property owned or thereafter acquired by the other company to be mortgaged to the trustee, which was afterwards done, and provided that no mortgage or lien should be placed upon any property of the other company, and that it would keep its property insured and in good repair. *Held*, that whether the mortgage was regarded as covering the actual ownership of the other company's real property, or the interest of the mortgagor therein as lessee, the value of such other company's real property should be considered in fixing the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 584-589; Dec. Dig. § 348.*]

Lyon and Betts, JJ., dissenting in part.

Certiorari by the People, on the relation of the American Ice Company, to review the determination of the State Board of Tax Commissioners, made in July, 1911, in fixing the amount of taxes payable upon a mortgage executed by the American Ice Company to the Knickerbocker Trust Company, trustee, dated February 1, 1909, and in apportioning the tax, and to review all the proceedings taken in relation thereto. The amount of the prior incumbrances on the real property to be deducted. The value of the real estate of the Knickerbocker Ice Company of Philadelphia to be taken into consideration in fixing the amount of the tax. Matter remitted to the State Board of Tax Commissioners for further consideration according to this decision.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Frank R. Savidge, of New York City (Newell Lyon, of New York City, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (Franklin Kennedy, Deputy Atty. Gen., of Albany, of counsel), for respondent.

LYON, J. On February 1, 1909, the relator, the American Ice Company, a corporation organized and existing under the laws of the state of New Jersey, executed and delivered to the Knickerbocker Trust Company, a New York state corporation, as trustee, a mortgage and deed of trust to secure the payment of its bonds to be issued

thereunder in the amount of $3,000,000, which mortgage, among other things, covered—

"all lands and real property of whatsoever nature and wheresoever situate that the company now owns or is in any way entitled unto, and all that it may hereafter acquire or become entitled unto, as well as all of the estate, right, title and interest in and to any real property now held by the company or to which it is or may hereafter become entitled, * * * all estates, interests, titles, remainders and reversions, as well in equity as in law."

Said mortgage contained the clause:

"The company simultaneously herewith has delivered to the trustee and pledged hereunder forty thousand shares of the par value of $12.50 each of the capital stock of the Knickerbocker Ice Company of Philadelphia (a corporation of the state of Pennsylvania), which shares are included in the property above described and are to be held, controlled and disposed of upon the trusts hereby established."

Said mortgage contained covenants upon the part of the mortgagor that:

"As soon as it can lawfully be done it will cause all the property, rights and franchises of any and every of the classes described in the granting clauses of this indenture and whether now owned or hereafter acquired of the Knickerbocker Ice Company of Philadelphia to be conveyed and mortgaged to the trustee to secure the bonds issued hereunder, or if and as soon as it can lawfully be done in place of such conveyance and mortgage, cause all such property, rights and franchises of said Knickerbocker Ice Company of Philadelphia to be conveyed to the company and effectually subjected to the lien of this indenture, subject only to the liens and charges now existing upon such property, and such floating indebtedness as the Knickerbocker Ice Company of Philadelphia shall incur in the ordinary course of its business prior to such conveyance; * * * and that no mortgage or other lien shall be placed or suffered to be created upon any of said property described in the schedule of property belonging to the Knickerbocker Ice Company of Philadelphia other than the lien of this indenture or of any mortgage or deed of trust executed by said Knickerbocker Ice Company for the sole purpose of further securing the bonds to be secured hereby; * * * and that the mortgagor would keep the mortgaged premises and also the property of the Knickerbocker Ice Company of Philadelphia in good repair, working order and condition, and equipped with suitable machinery and appliances."

Said mortgage contained covenants upon the part of the mortgagor to apply the proceeds of the bonds secured by the mortgage to refunding its indebtedness and other corporate purposes, and that forthwith from the proceeds thereof it would pay its certain bonds and notes secured by mortgage, as well as the bonds and notes secured by mortgage upon the property of the relator and of the Knickerbocker Ice Company of Philadelphia which were due or past due and payable, or would cause such bonds and notes to be otherwise extinguished; and that it would cause all of the mortgages or other instruments securing any of said bonds or notes to be satisfied and canceled of record, so that this indenture become a first lien upon all the property upon which said mortgages, or any of them, constitute liens of any and every of the classes described in the granting clauses of this indenture.

Said mortgage was recorded in the office of the register of New York county March 16, 1909, and on immediately subsequent dates in the various clerks' offices of the counties of this state in which said

mortgagor had real estate, and subsequently in the proper offices in counties outside the state in which any portion of the mortgaged property was situated.

At the time of recording said mortgage, the mortgagor paid to the register of New York county the sum of $4,612 as the tax which the mortgagor claimed was owing under the Tax Law, and left with said register duplicate statements specifying the value of property both within and without the state of New York, and the amounts of the prior incumbrances thereon, respectively, one of which statements said register transmitted to the State Board of Tax Commissioners.

On August 16, 1909, the Knickerbocker Ice Company of Philadelphia, as mortgagor, executed to the Knickerbocker Trust Company, as trustee and mortgagee, its mortgage of that date, reciting the execution of the said mortgage of February 1, 1909 by the American Ice Company; and that in order to secure the payment of the bonds mentioned in the said mortgage of the American Ice Company, and in consideration of the payment to it of the sum of $10, said Knickerbocker Ice Company had granted and sold unto said trustee all lands and real property of whatsoever nature and wheresoever situate that the Knickerbocker Ice Company then owned, or was in any wise entitled unto, and all that it might thereafter acquire.

After several hearings, the State Board of Tax Commissioners, on July 10, 1911, rendered and filed its final determination, in arriving at which said Board, in fixing the value of the real property covered by said mortgage without the state of New York, excluded from consideration the real property in the state of Pennsylvania standing in the name of the Knickerbocker Ice Company of Philadelphia, and in fixing the separate values of property within and without the state of New York covered by said mortgage did not deduct the incumbrances thereon, and by which determination said Board held that leaseholds were tangible property and covered by the mortgage.

The relator, feeling aggrieved by this determination of the State Board of Tax Commissioners, obtained, in September, 1911, a writ of certiorari, and such determination has thereby been brought into this court for review.

The parties hereto are agreed upon the values of the various properties claimed to be affected by the mortgage, and as to the amount of the prior mortgages on such various properties existing and of record at the time of the execution and recording of the mortgage of February 1, 1909.

The questions involved in this appeal are three in number: First, should the State Board of Tax Commissioners have included the value of the real property in the state of Pennsylvania, owned by the Knickerbocker Ice Company of Philadelphia, in determining the value of property without the state of New York affected by the mortgage; second, should said Board, in determining the amount taxable under the mortgage, have deducted the amount of all prior incumbrances upon the real property covered thereby; and, third, should the State

Board have included the value of relator's leaseholds in determining the proportion of the mortgage to be taxed?

As to the first question, section 260 of the Tax Law provided that:

"When the real property *covered* by a mortgage is located partly within the state and partly without the state it shall be the duty of the State Board of Tax Commissioners to determine what proportion shall be taxable under this article, by determining the relative value .of the mortgaged property within this state as compared to the total value of the entire mortgaged property, taking into consideration in so doing the amount of all prior incumbrances upon such property or any portion thereof."

The crucial question is whether the mortgage of February 1, 1909, *covered* the Pennsylvania real property. Concededly the title to this property stood in the name of the Knickerbocker Ice Company of Philadelphia. While all the capital stock of the Knickerbocker Company was owned by the American Ice Company, yet, owing to the possibility that the general laws of Pennsylvania did not allow a foreign corporation to hold the title to real estate in that state, the title was retained in the Knickerbocker Ice Company, which maintained a separate and independent corporate organization and existence.

The record does not disclose the requirements of the laws of Pennsylvania relative to the giving of a corporate mortgage; but from the mortgage of August 16th it would appear that action upon the part of the directors of the Knickerbocker Ice Company was essential to the execution of a valid, legal mortgage under the laws of that state. In fact, the relator does not contend that the mortgage of February 1st created a legal lien upon the Pennsylvania property, and, in fact, in the mortgage of February 1st states that, as soon as·it can lawfully be done it will cause the Pennsylvania property to be conveyed or mortgaged to the trustee; but the relator maintains that the mortgage imposed a lien which equity would enforce, and hence that such mortgage *covered* the Pennsylvania property, within the intent and meaning of the statute.

With this conclusion I cannot agree. The cases cited by relator are those in which the rights of innocent third parties were involved, or, for the greater part, in which there were equities making the decisions cited not applicable to the questions at issue here.

The word "covered" was evidently used in the statute in the ordinary signification of the word. In order to be covered by the mortgage, it was not only necessary that the property be included in the description of the real property mortgage, but also that the mortgage be executed by an authority which had the power to create a legal lien thereon. The State Board of Tax Commissioners is an administrative board. It is not clothed with authority to sit as a court of equity and determine whether, by reason of alleged equities, the mortgage might be held to be a lien upon the real property standing in the name of the Knickerbocker Ice Company of Philadelphia. Neither was it the duty of the State Board to await the determination of a court of equity as to whether the mortgage equitably covered the Pennsylvania real property. It was sufficient to justify the action of the State Board in excluding the value of the Pennsylvania real prop-

erty in determining the value of the property without the state of New York that the mortgage was not executed by the corporation having the title to the real property, and hence was not a legal lien thereon.

[1] Second, as to whether the State Board of Tax Commissioners, in determining the amount taxable under the mortgage, should have deducted the amount of all prior incumbrances on the real property covered thereby.

Section 260 of the Tax Law provided, as before stated, that in determining the proportion of the mortgage taxable the State Board should take into consideration in so doing the amount of all prior incumbrances upon such property, or any part thereof. The State Board refused to make any deduction on account of existing mortgages, and justifies such refusal upon the ground that the mortgagor in its mortgage of February 1st covenanted and agreed that it would apply the proceeds of said bonds to refunding its indebtedness, and would cause all its bonds and notes secured by mortgages, which were liens upon the property of the company, to be paid or otherwise extinguished, "so that this indenture shall become a first lien upon all the property upon which said mortgages or any of them constitute liens of any and every of the classes described in the granting clauses of this indenture." The mortgage also contained clauses to the effect that it would always be kept a first lien upon all the property and premises therein described; and that the mortgagor would not voluntarily create, or suffer to be created, any lien or charge which would be prior to the lien of the mortgage.

The respondent concedes that, if the prior mortgages were to remain incumbrances upon the real property mortgaged, they should be taken into consideration in determining the amount taxable under the mortgage. But the statute contains no provision that they are not to be considered if they are to be paid off by the proceeds of the bonds secured by the mortgage which is the subject of the tax. The statute says, without qualification, that such prior incumbrances shall be taken into consideration; and the relator was entitled to have deducted from the valuation of the real property covered by the mortgage the incumbrances thereon.

[2] Third, as to whether the State Board of Tax Commissioners erred in including the values of relator's leaseholds as being tangible property in determining the proportion of the mortgage to be taxed.

Section 260 of the Tax Law provides that:

"In determining the separate values of the property covered by any such mortgage within and without the state for the purposes of ascertaining the proportion of the principal indebtedness secured by the mortgage which is, taxable under this article, the State Board of Tax Commissioners shall consider only the value of *tangible* property covered by each mortgage."

Is a leasehold tangible property? Section 250 of the Tax Law provides that "real property" and "real estate" shall be understood to include everything a conveyance or mortgage of which can be recorded as a conveyance or mortgage of real property, under the laws of the state.

Estates for years are chattels real, and, except a lease for a term not exceeding three years, can be recorded. Real Property Law, §§ 33, 290, 291.

It would seem that under any possible definition of tangible property real property must be held to be such. People ex rel. Elias Brewing Co. v. Gass, 120 App. Div. 147, 104 N. Y. Supp. 885, affirmed 190 N. Y. 565, 83 N. E. 1129.

In determining as to the intent of the Legislature in the use of the word "tangible," it is proper to consider that the conceded purpose of the restriction to tangible property was to avoid the practice, then becoming prevalent, of removing bonds and stocks from the state, in order to reduce the mortgage tax. As also bearing upon the question, it is a matter of common knowledge that certain of the principal railroads within this state were being operated under leases for long periods of time, upon which mortgages were being given. It would hardly be reasonable to hold that by the use of the word "tangible" the Legislature intended to release mortgages upon leases of real property from taxation in plain contradiction of the provisions of section 253 of the Tax Law, which provided that a tax is imposed upon the principal debt, which, under any contingency, may be secured by mortgage on real property situated within this state.

We think that the State Board of Tax Commissioners committed no error in including the value of the relator's leasehold interests as being tangible property in determining the proportion of the mortgage to be taxed.

The determination of the State Board of Tax Commissioners should be modified by deducting the amount of all prior incumbrances on the real property covered by said mortgage, and as so modified should be affirmed.

BETTS, J., concurs.

JOHN M. KELLOGG, J. [3] The relator owned all the stock of the Knickerbocker Ice Company of Philadelphia. Upon its books and in its accounts it carried the real estate of the Philadelphia Company as its own, and its stock was carried at a nominal value, so that it treated itself in all respects as the owner of the real estate of the Philadelphia Company. For some reason it was understood that it could not take the actual title to the Philadelphia real estate, and for that reason the Philadelphia Company was kept alive, leasing all of its property to the relator for one dollar per year, and the relator was in possession of the property and carrying on the business as its own. All of the stock of the Philadelphia Company was transferred to the mortgage trustee. The ownership of the stock and the lease carried with it all the substantial value which there was to the Philadelphia property. In addition to the transfer of the stock, the mortgage covered all the real estate and every interest therein of the mortgagor, and provided that as soon as it legally could be done a formal mortgage would be made of the Philadelphia Company real estate to the

trustee, which mortgage was in fact issued before the hearing.  The American Ice Company mortgage also provided:

"That no mortgage or other lien shall be placed or suffered to be created upon any of said property described in the schedule of property belonging to the Knickerbocker Ice Company of Philadelphia other than the lien of this indenture, or of any mortgage or deed of trust executed by the said Knickerbocker Ice Company for the sole purpose of further securing the bonds to be secured thereby"

—and that the mortgagor would keep the mortgaged premises and the property of the Philadelphia Company in good repair; and also contained a covenant requiring the real estate of the Philadelphia Company to be properly insured.  The mortgage shows that both parties intended that it should cover that property, but for greater safety had a covenant for further assurance by a formal mortgage, when its execution could be brought about.  The intention of the Tax Law is that the tax is to be adjusted upon a fair and reasonable basis; and it is not unreasonable that the tax authorities should treat the mortgage as having the effect which all the parties thereto intended it should have.  I think the value of the real estate of the Philadelphia Company should be considered in apportioning the tax, the mortgages should be deducted from the value of the various parcels of real estate, and the leasehold interests are properly taxable.  For the purposes of this case, it is quite immaterial whether we consider the mortgage as covering the actual ownership of the Philadelphia Company real estate, or the interests of the relator therein as lessee and the owner of all the stock of the lessor.  It covered every substantial interest in the property.

The matter should be remitted to the Tax Commissioners for further action.

SMITH, P. J., and HOUGHTON, J., concur.