(162 App. Div. 223)

PEOPLE ex rel. CLEVELAND & BUFFALO TRANSIT CO. v. BYRNES et al., State Board of Tax Com'rs. (No. 69—17.)

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

TAXATION (§ 98*)—RECORDING TAXES—APPORTIONMENT OF PROPERTY WITHIN STATE—"TANGIBLE."

Tax Law (Consol. Laws, c. 60) § 260, provides that, when realty covered by a mortgage is located partly without the state, the State Board of Tax Commissioners shall determine what proportion shall be taxable by determining the relative value of the mortgaged property within the

state as compared to the total value of the entire mortgaged property, and, in determining the separate values of the property covered by any. such mortgage within and without the state for ascertaining the proportion of the principal· indebtedness secured by the mortgage which is taxable under the article, the board shall consider only the value of the "tangible property" covered by each mortgage. The trust mortgage in question covered real property in New York and Ohio, and personal property in Ohio consisting of three steamboats. *Held,* that it was error, in apportioning the amount of mortgage taxes to be paid on account of recording the mortgage in New York, to exclude the value of personal property, such as steamboats; the word "tangible" as used in the Tax Law referring to property which is in fact tangible and can be seen and estimated by the physical senses, including personal property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 196–198, 200 ;· Dec. Dig. § 98.*]

Certiorari by the People, on relation of the Cleveland & Buffalo Transit Company, against Thomas F. Byrnes and others, comprising the State Board of Tax Commissioners, to review the determination of the board in apportioning the amount of mortgage taxes to be paid upon recording a trust mortgage. Determination annulled, and matter remitted, with directions.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Brown, Ely & Richards, of Buffalo (Fred W. Ely, of Buffalo, of counsel), for relator.

Thomas Carmody, Atty. Gen. (Joseph A. Kellogg, of Glens Falls, and Franklin Kennedy, of Albany, of counsel), for defendants.

WOODWARD, J. This is a proceeding by certiorari to review the determination of the State Board of Tax Commissioners in apportioning the amount of mortgage taxes to be paid on account of the recording of a certain trust mortgage, on the 18th day of June, 1913, in the office of the clerk of Erie county. The relator, the Cleveland & Buffalo Transit Company, a corporation organized and doing business under the laws of the state of Ohio, made a trust mortgage to M. E. Farr, as trustee, which mortgage secured an issue of $1,000,-000 of bonds, and this mortgage was offered for record on the 18th day of June, 1913, at the office of the clerk of Erie county, and upon the payment of a recording fee of $278 the same was duly recorded, and the question of the apportionment of the amount to be paid was in due course submitted to the State Board of Tax Commissioners, where the determination was made that such recording fee should have been the sum of $2,925. This proceeding is brought to review this determination. There is no dispute as to the facts. This mortgage by its terms covered real property in the state of New York of the value of $160,700, real property in the state of Ohio of the value of $114,000, and personal property in the latter state, consisting of three steamboats, of the aggregate value of $1,792,000, making a total of $2,066,700, or, as given in the statement required by section 260 of the Tax Law, the total of $2,171,400; these variations being of no material importance in determining the question of law involved.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The State Board of Tax Commissioners has determined, under the provisions of section 260 of the Tax Law (Consol. Laws, c. 60), that the proportion of the mortgage debt represented by the mortgage in the state of New York is the relation which the value of the real property within the state of New York bears to the value of the real property in the state of Ohio, or, in other words, that the mortgage is to be considered as based entirely upon the real property involved, excluding the personal property covered by the mortgage, and that the mortgage of $1,000,000 is to be apportioned upon the value of the New York real property as compared with the value of the Ohio real property, which makes the mortgage upon this $160,700 worth of real property in the state of New York stand for $585,002 of the indebtedness, and to carry that proportion of the burden of the recording fee. The question is whether this is the correct construction of the provisions of the Tax Law. It seems to us entirely obvious that this is not the law, for it undertakes to place a burden of taxation upon property which is not within the jurisdiction of this state, and such a construction ought not to be given to a statute unless its language clearly demands it.

Section 260 of the Tax Law, in so far as it is relevant to the question here under consideration, provides that:

When "the real property covered by a mortgage is located partly within the state and partly without the state it shall be the duty of the state board of tax commissioners to determine what proportion shall be taxable under this article by determining the relative value of the mortgaged property within this state as compared to the total value of the entire mortgaged property, taking into consideration in so doing the amount of all prior incumbrances upon such property or any portion thereof. * * * In determining the separate values of the property covered by any such mortgage within and without the state for the purpose of ascertaining the proportion of the principal indebtedness secured by the mortgage which is taxable under this article, the state board of tax commissioners shall consider only the value of the tangible property covered by each mortgage, taking into consideration in so doing the amount of all prior incumbrances thereon."

How this language can be tortured into an authority for excluding the value of the great steamships of the relator, with a value of nearly $2,000,000, it is difficult to understand, and this difficulty is not relieved by anything which we find in the discussion of this case.

The relator, a corporation organized and doing business under the laws of the state of Ohio, we may assume has the legal right to mortgage its property for the purpose of securing an issue of bonds. It happens to own, in connection with its business, real property in the state of New York of the value of $160,700, and it is necessary to the security of the holders of its bonds that this mortgage shall be recorded in the county or counties of the state of New York where this real property is owned. If, instead of a blanket mortgage covering all of its property, the corporation had made two mortgages, one upon its real estate in the state of New York and another upon its real estate and personal property in the state of Ohio, it must be entirely clear that the state of New York could not demand more than the recording fee for the mortgage made upon the real property within the state of New York, and no good reason suggests itself why

the result should be different simply because the corporation has chosen to make one mortgage covering all of its property, and this is exactly what the plain reading of the language of the statute contemplates. The effort to make the language of the act, which provides that in "ascertaining the proportion of the principal indebtedness secured by the mortgage which is taxable under this article, the State Board of Tax Commissioners shall consider only the value of the tangible property covered by each mortgage," relate to tangible real estate only, is utterly without warrant, and fails to grasp the legislative purpose entirely. The obvious purpose of the Legislature was to exclude, not personal property of a tangible form, but franchise values existing in foreign jurisdictions, and which might operate to practically defeat the operation of the recording tax upon real property in our own state. Suppose, for instance, that the relator, in addition to its real estate and personal property in the state of Ohio, had franchises—intangible property—of the value of $10,000,000, and this mortgage for $1,000,000 was offered for record. The result would be that the $160,700 of real estate would be a most insignificant portion of the security pledged for the debt, and the income of the state would be reduced to a negligible figure; and it was to avoid such a result as this that the statute provided that in determining the amount of the mortgage tax the tangible property only should be taken into consideration. Nor is the supposed case one not likely to occur.

Take the case of the Adams Express Company. That corporation had an organization and a business which was worth at least the sum of $16,800,000. The value of its real estate in the state of Ohio was $25,170. It owned real estate outside of Ohio of the value of $3,005,157.52. It had personal property in the state of Ohio of the value of $42,065, and personal property outside of that state of the value of $1,117,426.05. This gave to the corporation a total valuation of its tangible property of $4,189,818.57. Commenting on these facts, the United States Supreme Court, in Adams Express Company v. Ohio, 166 U. S. 185, 223, 17 Sup. Ct. 604, 607 (41 L. Ed. 965), say:

"But where is the situs of this intangible property? The Adams Express Company has, according to its showing, in round numbers, $4,000,000 of tangible property scattered through different states, and with that tangible property thus scattered transacts its business. By the business which it transacts, by combining into a single use all these separate pieces and articles of tangible property, by the contracts, franchises, and privileges which it has acquired and possesses, it has created a corporate property of the actual value of $16,000,000. Thus, according to its figures, this intangible property, its franchises, privileges, etc., is of the value of $12,000,000, and its tangible property of only $4,000,000. Where is the situs of this intangible property? Is it simply where its home office is, where is found the central directing thought which controls the workings of the great machine, or in the state which gave it its corporate franchise; or is that intangible property distributed wherever its tangible property is located and its work is done? Clearly, as we think, the latter. Every state within which it is transacting business and where it has its property, more or less, may rightfully say that the $16,000,000 of value which it possesses springs not merely from the original grant of corporate power by the state which incorporated it, or from the mere ownership of the tangible property, but it springs from the fact that that tangible property it has combined with contracts, franchises, and privileges into a single unit of property, and this state contributes to that aggregate value not merely the sep-

arate value of such tangible property as is within its limits, but its proportionate share of the value of the entire property."

In that case it was held that the state of Ohio had a right to levy a tax upon the value of the plant of the corporation within the state of Ohio, based upon its intangible property in such state, and this distinction between tangible and intangible property is distinctly made in the Tax Law itself, where, in section 2, after defining the terms "land," "real estate," and "real property" as including special franchise values, it declares that:

A "special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise."

See People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 437–441, 67 N. E. 69, 73 (63 L. R. A. 884, 105 Am. St. Rep. 674). In the case cited the court say:

"The Legislature also found certain tangible property, which was subject to taxation, situated in the public streets and used only in connection with and as a part of the intangible property not taxed, and of no substantial value except when so used. It found that the valuation of this new kind of property, intangible, invisible, and elusive, but of great value, would be attended with peculiar difficulties, which would require a degree of knowledge and skill not possessed by local assessors, but belonging only to experts who had long and carefully studied the subject of taxation in all its varied aspects. The problem was to place a just and adequate value upon a right capable of valuation, but which was unseen, without form or substance, and, as it were, the mere breath of the Legislature."

Here then is to be found the meaning of the word "tangible" as used in the Tax Law; it refers to property which is in fact tangible, which may be seen, weighed, measured, and estimated by the physical senses; and the effort to make it exclude personal property in determining the proportion of value to be ascribed to mortgages offered for record, where they involve real property outside of the state, is wholly without justification in reason or authority. When the Tax Law refers to tangible property, it means tangible property, and excludes all franchise values and matters of that character, and it cannot be extended beyond this without doing violence to the language, and without disregarding sound principles of public policy, which requires that we shall deal justly with our neighboring states.

The determination of the State Board of Tax Commissioners should be annulled, with $50 costs and disbursements, and the matter remitted to that board with directions to determine the amount of the tax in accord with this opinion. All concur.