(174 App. Div. 320)

PEOPLE ex rel. ASTOR TRUST CO. et al. v. STATE TAX COMMISSION.

(Supreme Court, Appellate Division, Third Department. September 13, 1916.)

1. TAXATION ⊂⊃98—MORTGAGES—RECORDING TAX—"TANGIBLE PROPERTY"— VESSELS.

Tax Law (Consol. Laws, c. 60) § 260, provides that, in determining the separate values of the property covered by any mortgage, to ascertain the proportion of the principal indebtedness secured by the mortgage which is subject to a recording tax under the article, the state board of tax commissioners shall consider only the value of the tangible property covered by such mortgage. A New York corporation owned real and personal property in New York and other states, and engaged, as one branch of its business, in menhaden fishing along the Atlantic Coast, using certain vessels, with their equipment. Very little of the fishing was carried on in the state, although fish were unloaded at a point therein. A certificate of enrollment was issued and recorded in a district within the state including the relator's principal place of business, designating the port of entry therein as their home port, as required by Rev. St. U. S. § 4141 (U. S. Comp. St. 1913, § 7719), and making the custom house in such district the place where a mortgage thereon was required to be recorded under section 4192 (U. S. Comp. St. 1913, § 7778). Held, that the vessels used were "tangible property," which is such property as may be seen, weighed, measured, and estimated by the physical senses, and which is capable of being possessed, and that they were properly treated as tangible property within the state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 196–198, 200; Dec. Dig. ⊂⊃98.

For other definitions, see Words and Phrases, Second Series, Tangible Property.]

2. TAXATION ⊂⊃98—SITUS—VESSEL.

The taxable situs of a vessel, which has no permanent location within another jurisdiction, is the domicile of the owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 196–198, 200; Dec. Dig. ⊂⊃98.]

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. TAXATION ☞219—RECORDING TAX—MORTGAGES—"SUPPLEMENTAL"—STAT-
UTE.

Tax Law (Consol. Laws, c. 60) § 255, provides that if, subsequent to tne
recording of a mortgage on which all taxes accrued under the article had
been paid, a supplemental mortgage is recorded to correct or perfect any
recorded mortgage, such supplemental mortgage shall not be subject to
taxation, unless it secures a new or further indebtedness, provided that if,
on recording it, any exemption is claimed, there shall be filed a statement
of the facts on which such claim is based. Relator, a New York cor-
poration, gave a trust company a mortgage on all its tangible real and
personal property to secure payment of its bonds, which mortgage was
recorded, and, though no statement of exemption was filed, presented for
recording a substituted or superseding mortgage, executed to refund or
discharge the former mortgage, and because the bonds secured by the
first mortgage could not be disposed of, as parts of the real and personal
property covered thereby were subject to a prior lien, under such super-
seding mortgage the bonds thereby secured were exchanged for the bonds
issued under the former mortgage due at the same date. *Held*, that the
latter mortgage was not a supplemental mortgage, and therefore not ex-
empt from taxation; the word "supplemental" meaning "serving to supply
what is lacking, supplementary."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 358, 359, 363;
Dec. Dig. ☞219.]

Certiorari by the People of the State of New York, on the relation
of the Astor Trust Company and the Atlantic Phosphate & Oil Corpo-
ration, to review the determination of the State Tax Commission as to
the amount of a mortgage tax upon mortgages executed by the At-
lantic Phosphate & Oil Company to the Astor Trust Company. Deter-
mination confirmed.

See, also, 160 N. Y. Supp. 859.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-
WARD, and COCHRANE, JJ.

White & Case, of New York City (Joseph M. Hartfield and Henry
D. Strack, both of New York City, of counsel), for relators.

Egburt E. Woodbury, Atty. Gen. (Franklin Kennedy, Deputy Atty.
Gen., of counsel), for respondent.

LYON, J. [1, 2] These are proceedings by certiorari to review two
determinations of the state tax commission, apportioning the amounts
of the taxes for recording two mortgages given by the relator Oil Cor-
poration to the relator Trust Company, as trustee, in March and
July, 1913, and involve the construction of sections 255 and 260 of the
Tax Law (Consol. Laws, c. 60; Laws 1909, c. 62). There is practi-
cally no dispute as to the facts. Each mortgage was given to secure the
payment of bonds of the Oil Corporation, to the amount of $1,500,000,
and covered all the tangible real and personal property then owned by
the corporation. Both relators were New York state corporations.
The Oil Corporation owned both real and personal property in the
five states of New York, Maine, Massachusetts, Rhode Island, and
Tennessee, of the aggregate value, exclusive of prior incumbrances,
of upwards of $5,000,000. It was engaged from July 1st to November
1st, as one branch of its business, in menhaden fishing along the At-
lantic coast from Maine to Florida. In connection with this industry

it possessed certain vessels, with their equipments, 25 of which were covered by the March mortgage, and 23 by the July mortgage. The March mortgage was recorded April 19, 1913, and the July mortgage October 22, 1913, in the office of the clerk of Suffolk county, N. Y.

At the time of recording each of said mortgages the relators filed with the recording officer duplicate verified statements in alleged compliance with section 260 of the Tax Law, and paid to such clerk, as the recording tax upon such mortgage, the sum of 50 cents for each $100 of the $1,438,000 advanced and secured by mortgage upon property situated within this state, computed upon the basis of the proportionate net value of the mortgaged real and personal property within the state and the total net value of the entire mortgaged property. In such statements so filed by the relators at the time of recording the March mortgage the value of the real and personal property without the state, less prior incumbrances, was given as $3,000,000; of that within the state as $772,000; and the value of floating equipment as $1,260,000. In making such tax computation as to each mortgage, the relators treated the floating equipment as tangible property without the state, and hence computed no tax upon its value. The state tax commission in its determination as to apportionment treated the floating equipment as tangible property within the state, and hence held that there was yet unpaid of the recording tax upwards of $3,800. This determination of the state tax commission, and its refusal to consider the July mortgage a supplemental mortgage, constitute the complaint of the relators upon this appeal.

Section 260 of the Tax Law, under which such determination was made, provided in part:

"In determining the separate values of the property covered by any such mortgage within and without the state, for the purpose of ascertaining the proportion of the principal indebtedness secured by the mortgage which is taxable under this article, the state board of tax commissioners shall consider only the value of the tangible property covered by each mortgage. * * *"

Unquestionably the vessels were "tangible property." Tangible property is such property as may be seen, weighed, measured, and estimated by the physical senses. People ex rel. C. & B. Transit Co. v. Byrnes, 162 App. Div. 223, 147 N. Y. Supp. 465. It is property capable of being possessed or realized; readily apprehensible by the mind; real; substantial; evident. Webster's New International Dictionary. Even a leasehold is tangible property (People ex rel. Am. Ice Co. v. Tax Com'rs, 153 App. Div. 532, 539, 138 N. Y. Supp. 344, affirmed 207 N. Y. 766, 101 N. E. 1115), as is also a mortgage upon a lease of real property (People ex rel. Elias Brewing Co. v. Gass, 120 App. Div. 147, 104 N. Y. Supp. 885, affirmed 190 N. Y. 565, 83 N. E. 1129).

The relators, in support of their contention that the vessels were tangible property without the state, introduced evidence to the effect that very little of the fishing in which the vessels were engaged was done within the three-mile limit, and that 90 per cent. of it was done off the coasts of states other than New York; that none of the vessels were actually within the state of New York at the time the March mortgage was executed; that, although fish were unloaded at Prom-

ised Land, they were also unloaded in the states of Massachusetts, Delaware, and North Carolina; that 12 of these vessels were engaged exclusively in fishing outside of the state of New York; and that all the vessels wintered at Portsmouth, R. I. However, it appears that the principal office and place of business of the relator Oil Corporation was at Promised Land, in the county of Suffolk, N. Y.; that at the dates, and also at the times, of recording these mortgages, all the vessels were enrolled and licensed under the laws of the United States to carry on the fisheries, and that each of the certificates of enrollment was issued and recorded at the port of Greenport, district of Sag Harbor, Suffolk county, N. Y., which was designated in each certificate as the "home port."

While perhaps not conclusive upon the question at issue, the situs of the vessels at the time of recording the mortgages has an important bearing upon whether the vessels should have been held to be property within or without the state. We may also properly look for guidance to decisions of the courts taxing vessels as property.

The legal situs of sea-going vessels for the purpose of taxation is the port where they are registered under the laws of the United States as their home port, and this is not lost by mere absence and employment elsewhere, but is dependent upon the registration and continuance until a new situs is acquired. People v. Com'r of Taxes of New York, 58 N. Y. 242.

Where a vessel was registered in a state, and the corporation owning it has its business office in that state, a vessel, although plying to a point in another state, is properly taxed in the state of its registration. Irvin v. New Orleans, St. L. & C. R. Co., 94 Ill. 105, 34 Am. Rep. 208.

Ferryboats plying between Jersey City and New York, and enrolled in the custom house in the latter city, and owned there, are not taxable in the former city, not being situated there within the meaning of the statute. New York & E. R. Co. v. Haight, 30 N. J. Law (1 Vroom) 428. The home port of a vessel engaged in interstate commerce is its situs for taxation. Ayer & Lord Tie Co. v. Commonwealth, 202 U. S. 409, 26 Sup. Ct. 679, 50 L. Ed. 1082, 6 Ann. Cas. 205.

Vessels engaged in foreign or interstate commerce, owned by a corporation of the state, which are registered under the laws of the United States and have the name of their home port in such state painted on their stern, have their situs for the purpose of taxation at such home port. Yost v. Lake Erie Transp. Co., 112 Fed. 746, 50 C. C. A. 511.

Suffolk County, N. Y., was not only the domicile of the owner, and the place of enrollment of the vessels, but the custom house at Greenport was the place where a mortgage upon these vessels was required to be recorded. Rev. St. U. S. § 4192. The registry of the vessels was required to be near the home of the owner. Id. § 4141. The evidence does not show that prior to the time of recording these mortgages the vessels had acquired an actual situs in any other state. The taxable situs of a vessel which has no permanent location within another jurisdiction is the domicile of the owner. Southern Pacific Co. v. Commonwealth of Kentucky, 222 U. S. 63, 32 Sup. Ct. 13, 56 L. Ed 96. The domicile of the owner, as well as the port of enrollment of the vessels, having been at a place within the state of New York,

such was the situs of the vessels, and they must be held to have been tangible property within the state, within the intent and meaning of section 260 of the Tax Law.

This holding is in conformity with the decision of this court in the case of People ex rel. C. & B. Transit Co. v. Byrnes, supra. The conclusion reached in that case, that it was the intention of the Legislature that tangible personal property covered by the mortgage both within and without the state should be taken into account in making the apportionment, was confirmed by the action of the Legislature of the present year (Laws 1916, c. 335), in revising the language of section 260, so as to remove the ambiguity which existed in the previous statute, by specifically stating that personal as well as real property is to be considered.

[3] The relators contend, however, that such decision cannot apply to the July mortgage, for the reason that such mortgage was a supplemental mortgage, and hence exempt from taxation under section 255 of the Tax Law, the pertinent portions of which are as follows:

"If subsequent to the recording of a mortgage on which all taxes, if any, accrued under this article have been paid, a supplemental instrument or mortgage is recorded for the purpose of correcting or perfecting any recorded mortgage * * * such additional instrument or mortgage shall not be subject to taxation under this article, unless it creates or secures a new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded primary mortgage. * * * If at the time of recording such instrument, or additional mortgage, any exemption is claimed under this section, there shall be filed with the recording officer and preserved in his office a statement under oath of the facts on which such claim for exemption is based."

Not only have all the mortgage taxes which accrued upon the March mortgage not been paid, but at the time the July mortgage was presented for recording no statement was filed of the facts on which the claim of the relators for exemption of the July mortgage was based, nor even a claim made of the right of exemption, all of which were required by the statute in order to make the claim of right of exemption available. Nevertheless, the relators claimed before the state tax commission, and now urge before us, that the July mortgage was not taxable, for the reason that it was supplemental to the March mortgage within the intent of the Tax Law.

"Supplemental" is defined in Bouvier's Law Dictionary: "That which is added to a thing to complete it." By Webster's New International Dictionary, "supplement" is defined: "To fill up or supply by additions; to add something to; to fill the deficiencies of"; and "supplemental" as "serving to supply what is lacking; supplementary." As was said in Hygienic Ice & Refrigerating Company v. Franey, 142 App. Div. 143, 147, 127 N. Y. Supp. 30, 33:

"A supplemental mortgage contemplates something to which it is supplemental; it is not the primary and only mortgage. In this case the first mortgage was discharged, and the mortgage in question was intended as a first mortgage to take the place of the other one which was to be discharged. The statute does not contemplate that, if a man pays one mortgage with money borrowed upon another mortgage, the latter mortgage is exempt from taxation. Both are original mortgages, and the exemption provided for a supplemental mortgage has no application."

In the case at bar the July mortgage was a substituted or superseded mortgage, rather than a supplemental mortgage. It was executed for the purpose of refunding and discharging the March mortgage. It was no less a refunding mortgage because executed before the March mortgage became due. By the terms of the section a supplemental instrument or mortgage, in order to be exempt from taxation, must be recorded for the purpose of correcting or perfecting a recorded mortgage, or pursuant to some provision thereof.

The relators concede that the March mortgage was in no respect incorrect or imperfect. The evidence shows that the July mortgage was executed because the bonds secured by the March mortgage could not be disposed of, for the reason that portions of the real and personal property covered by the mortgage were subject to a prior lien of $62,000. Portions or all of this incumbered property, situated in the states of Tennessee and New York, and perhaps in Delaware, also, were turned over to creditors of the Oil Corporation, and the July mortgage given upon such portions of the property covered by the March mortgage as were free from that lien. The bonds secured by the July mortgage were then exchanged dollar for dollar for the bonds issued under the March mortgage, and in March, 1914, the March mortgage was discharged. The value of the property included in the March mortgage which was excluded from the July mortgage, according to statements of relators filed with the county clerk at the times of recording the mortgages, was upwards of $1,000,000, and included two of the vessels. The March mortgage was named "first and refunding mortgage," and the July mortgage "refunding gold bond mortgage." The bonds secured by the former become due March 1, 1933, and of the latter July 1, 1933. That the relators did not themselves consider the July mortgage a supplemental mortgage appears from the fact that they made no such claim at the time of presenting the mortgage for record, but filed verified statements in conformity with section 260, for which the amount of the liability might be computed, and voluntarily paid the full sum of upwards of $1,000 which they admitted to be owing, as the recording tax.

The decision of the state tax commission should be affirmed, with $50 costs and disbursements. All concur.

