THE PEOPLE OF THE STATE OF NEW YORK ex rel. TERMINALS AND TRANSPORATION CORPORATION OF AMERICA, Relator, *v.* THE STATE TAX COMMISSION, Respondent. (Proceedings Nos. 1 and 2.)

Third Department, March 27, 1930.

*Dudley, Stowe & Sawyer* [*Ansley W. Sawyer* and *Walter C. Lindsay* of counsel] for the relator.

*Hamilton Ward, Attorney-General* [*Henry S. Manley, Assistant Attorney-General,* of counsel], for the respondent.

HILL, J. These proceedings involve the recording tax upon two trust mortgages given by the relator, one to secure first mortgage and collateral trust bonds in an unlimited amount, under which, at the time of recording, $3,500,000 of bonds were issued, which were sold at 90. From the proceeds, $2,256,000 were impounded with the trustee for purposes later mentioned. The other, to secure $1,500,000 of seven per cent ten-year convertible debenture bonds, which were issued and sold at 90. From the proceeds, $187,650 were impounded with the trustee.

The mortgagor paid a tax of $76.12 upon the $3,500,000 mortgage and of $32.62 upon the $1,500,000 mortgage. These amounts were computed by the county clerk under the provisions of section 260 of the Tax Law (added by Laws of 1916, chap. 335, as amd. by Laws of 1918, chap. 204), upon the assumption that the value of the mortgaged property within the State was $21,000 and outside $4,807,000. The Tax Commission has fixed the tax at fifty cents a hundred dollars (Tax Law, § 253, as amd. by Laws of 1916, chap. 323) computed upon the entire $3,500,000 secured by and issued under the first mortgage, and upon the entire amount secured by the second mortgage. It has determined that section 260 has no application as the mortgages are not liens upon real property "Partly within the State and partly without the State." Because of its belief that section 258 of the Tax Law (as amd. by Laws of 1921, chap. 532) does not permit, the Commission has refused to remit the penalties in excess of one-half of one per cent per month on the larger mortgage. We believe the section applies with like effect to each mortgage.

These mortgages are liens upon real property at Buffalo of the value of $21,000 owned by the mortgagor, and upon all of the

stocks and bonds owned by the mortgagor in its nine subsidiary corporations, all engaged in the business of navigation on the Great Lakes. The property consists of ships and terminals. There are terminal facilities already constructed or in process at Duluth, Chicago and Detroit, the title in each city being in a separate corporation. There are four ships, each belonging to a separate corporation. Another transit company owns two ships. These are operated by still another company. The mortgagor owns all the bonds issued by the subsidiary corporations, and all the stock, except one-twentieth of the Duluth corporation, and one-fifth of the Detroit corporation.

The 2d paragraph of section 260, which is discarded by the Commission as inapplicable, has to do with mortgages which are liens upon personal property, notwithstanding that the first sentence would indicate otherwise. It contains this provision: " In determining the separate values of the property within and without the State the Tax Commission shall consider only the tangible property, real and personal, except that leases of real property shall be deemed tangible property." The bonds and stocks pledged as security for these mortgages are tangible property. The bonds are liens upon, and the stock represents, substantial property, capable of being possessed. ( *New Orleans* v. *Stempel,* 175 U. S. 309; *DeGanay* v. *Lederer,* 250 id. 376; *People ex rel. Jefferson* v. *Smith,* 88 N. Y. 577; *People ex rel. Elias Brewing Co.* v. *Gass,* 120 App. Div. 147; *People ex rel. C. & B. Transit Co.* v. *Byrnes,* 162 id. 223; *People ex rel. Astor T. Co.* v. *State Tax Commission,* 174 id. 320.) The State Board of Tax Commissioners in *People ex rel. C. & B. Transit Co.* v. *Byrnes* (*supra*) contended for a construction of section 260 as it read in 1914, that when a mortgage covered real property within the State of New York and real and personal property in the State of Ohio, no consideration should be given to the personal property, and the tax should be computed with regard only to the real estate. The *Byrnes* decision was made prior to the amendment (Laws of 1916, chap. 335) and when the statute made no mention of " personal " property, with the first sentence of the paragraph in its present form, apparently confining the entire application of the section to real property. Yet it was determined that tangible personal property was to be included and considered in computing the tax. After such amendment it was said in *People ex rel. Astor T. Co.* v. *State Tax Commission* (*supra,* p. 325): " This holding is in conformity with the decision of this court in the case of *People ex rel. Cleveland & Buffalo Transit Co.* v. *Byrnes* (*supra*). The conclusion reached in that case, that it was the intention of the Legislature that tangible personal property covered by the mort-

gage both within and without the State should be taken into account in making the apportionment, was confirmed by the action of the Legislature of the present year (Laws of 1916, chap. 335), in revising the language of section 260 so as to remove the ambiguity which existed in the previous statute, by specifically stating that personal as well as real property is to be considered." The method of computation provided in section 260 indicates an intention by the Legislature to levy a recording tax dependent upon and measured by the value which the property within the State bears to that without, in furnishing security for the loan.

The decision of the Tax Commission, contemplating that these mortgages are liens upon real property within the State of the value of $21,000 and upon tangible personal property without the State of the value of nearly $5,000,000, levied a recording tax of $25,000 and certain penalties. No consideration was given to the tangible personal property outside the State, because all the real property was within the State. The Commission concedes that if the mortgages were liens upon one rood of land located outside the State, having only a nominal value, then the personal property would be considered in making the computation. The Legislature could not have intended a result so unjust and unreasonable. " A construction of a statute which leads to an absurd consequence must always be avoided, as an absurd purpose is not to be attributed to the law makers." (*People ex rel. Twenty-third Street R. R. Co.* v. *Comrs. of Taxes of N. Y.*, 95 N. Y. 554, 559.)

Except for the artificial personalities of these several corporations, the mortgages are liens upon real property " partly within the State and partly without the State." The property of the mortgagor and its nine subsidiary corporations is all used under one management, in one business. The stock of the subsidiaries owned by outsiders is so inconsiderable that there is substantially a single ownership of all the properties. Unity of management and ownership of the boats and terminal facilities in the several lake ports would result in business efficiency and economy. The property of all of the corporations is pledged to provide funds for the construction or improvement of two of the terminals, each separately owned by a subsidiary company. The corporations were organized in the several States where the property is located, for local reasons. At times " courts will look beyond the mere artificial personality which incorporation confers, and, if necessary to work out equitable ends, will ignore corporate forms " (*Colonial Trust Co.* v. *Montello Brick Works*, 172 Fed. 310, 313; *Ultramar Co., Ltd.*) v. *Minerals Separation, Ltd.*, 126 Misc. 208; 236 N. Y. 647, and refuse to be " trammeled by the logic derived from corporate

existence where it only serves to distort or hide the truth" (*Anthony* v. *American Glucose Co.*, 146 N. Y. 407, 413) and determine the issue without regard to the abstract fact of incorporation. (*Seymour* v. *S. F. C. Assn*, 144 N. Y. 333.)

The impounded portion of the proceeds of these mortgages was to be used to complete or improve the docking facilities in Buffalo, Chicago and Detroit, and these, improved, were regarded by the mortgagor and the bondholders as a part of the security. The Commission should take sufficient proof to permit it to determine the proportionate security which the property within the State provided, taking into consideration the improvements contemplated through the expenditure of the impounded proceeds of these mortgages and disregarding the abstract fact of the separate incorporation of the several companies.

The determination of the State Tax Commission should be annulled, with fifty dollars costs and disbursements, and the matter remitted.

DAVIS and HASBROUCK, JJ., concur; HINMAN, Acting P. J., dissents, with an opinion in which WHITMYER, J., concurs.

HINMAN, Acting P. J. (dissenting). Stocks and bonds are "property" which may be given a definite situs for taxation purposes even though they are merely evidences of ownership or evidences of debt. But these refinements are not decisive of legislative intent in using the term "tangible property." "Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them." (*De Ganay* v. *Lederer*, 250 U. S. 376, 381.) I have no doubt that stocks and bonds could have been included in section 260 just as leases were included, but they are not commonly known as tangible personal property but as intangible. In *Kirtland* v. *Hotchkiss* (100 U. S. 491, 498) it was held that a debt in the form of a bond was "intangible property," but for purposes of taxation could be taxed at the domicile of the creditor if the statute so provided. The most that was held in *New Orleans* v. *Stempel* (175 U. S. 309) was that while choses in action are not generally recognized as tangible property, yet they have such a concrete form that a State may declare that if found within its limits they shall be subject to taxation. "'They have such an independent situs that they may be taxed where they are situated.'" In other words, they are personal property having a visible and tangible existence but they are not what is commonly known as "tangible personal property." In the absence of statute they are always treated as intangible property.

The exception in section 260 (" except that leases of real property

shall be deemed tangible property ") bears out an interpretation that " tangible " was used in its ordinary sense. A lease is a mere contract for the possession and profits of land. If stocks or bonds (mere choses in action) were intended, why were they not expressly included? We are referred to no case where they have been held to be " tangible property " but only to cases where a statute has been construed to include them as " property " for taxation purposes. That is true in *People ex rel. Jefferson* v. *Smith* (88 N. Y. 576). Even in that case the Court of Appeals called mort-gage securities " choses in action " but said that " choses in action can have a situs away from the domicile of the owner for the purpose of taxation and for other purposes " as frequently mani-fested in the statutes of this State. The cases of *People ex rel. C. & B. Transit Co.* v. *Byrnes* (162 App. Div. 223) and *People ex rel. Astor T. Co.* v. *State Tax Commission* (174 id. 320) construed the term " tangible property " as used in section 260 of the Tax Law, but the application was to " vessels " as tangible property which they unquestionably are. What was said about excluding all " franchise values and matters of that character " does not necessarily mean that choses in action, usually thought of as intangibles, should be deemed to be included within the term " tangible property." In *People ex rel. American Ice Co.* v. *Tax Commissioners* (153 App. Div. at p. 539) Judge Lyon said: " In determining as to the intent of the Legislature in the use of the word ' tangible ' it is proper to consider that the conceded purpose of the restriction to tangible property was to avoid the practice then becoming prevalent of removing bonds and stocks from the State in order to reduce the mortgage tax." There were two opinions in that case and the Court of Appeals modified the decision of the Appellate Division on the opinion of Lyon, J., below (207 N. Y. 766).

We must read the whole section and give effect to all parts of it. *First.* Apportionment under this section is allowed only when the " real property " covered by the mortgage is partly without and partly within the State. *Second.* In estimating the proportion of the property to be taxed where the real property is partly within and partly without the State the separate values shall be fixed with reference only to the " tangible property, real and personal," except that leases shall be deemed tangible property. There is apt to be much tangible personal property covered by such a trust mortgage, such as loose machinery, rolling stock, etc., or vessels as indicated in the two cases cited above. But the converse of " tangible " is " intangible " and it seems to me that the Legislature must have meant to exclude everything usually denominated as

" intangible personal property " which would mean franchises good will, stocks, bonds and other choses in action. Therefore, since the language of the whole section should be given its usual and ordinary meaning in the absence of clear intention to the contrary, we are able to harmonize the whole section only as contended by the Tax Commission, and since there was no real property outside the State there was no occasion for apportionment under section 260, and if there had been real property outside the State this intangible property could not have been considered.

I vote to confirm the determination of the Commission.

WHITMYER, J., concurs.

In each proceeding: Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the State Tax Commission to proceed in accordance with opinion.