In the Matter of the Application of MCNEEL MARBLE COMPANY, Petitioner, for an Order of Certiorari against MARK GRAVES and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, April 29, 1936.

*Bender, Ford, Benson & Comstock* [*Eugene J. Steiner* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the respondents.

McNAMEE, J. A tax has been assessed by the State Tax Commission against the petitioner for the privilege of selling tangible personal property at retail in this State, for the period beginning May 1, 1933, and ending June 30, 1934. (Tax Law, § 391.) The taxpayer protests against the tax, on the grounds that its sales were made in interstate commerce, and that the tax is invalid.

The petitioner, McNeel Marble Company, is a Georgia corporation, with a plant at Marietta in that State, engaged in the manufacture of gravestones and similar memorials which it sells at retail. Orders are given and contracts signed, and twenty per cent of all of its sales are effected in the State of New York. The memorials are fabricated in Georgia, and nearly all of its product sold in this State, except foundations, is transported here by railroad, consigned to itself, and from the railroad station this product is moved to the site by trucks owned and operated by the petitioner, the company maintaining no storage in New York. The foundations for these memorials are manufactured in this State, and are installed by the petitioner.

The petitioner also maintains an office and a sales force in New York, as well as a show room for the display of its wares. Upon the making of a contract ten per cent or more of the purchase price is paid down, and the balance is paid when the setting has been completed. Of the entire purchase price of a memorial, the cost of sales, of the foundation, of hauling and setting is about thirty-seven per cent.

On April 12, 1934, the petitioner obtained a certificate, pursuant to section 210 of the General Corporation Law, authorizing it to do business in the State of New York; and, among other things, authorizing it to engage in and contract for the sale of memorials, to maintain an office in this State, to carry out all things incident thereto, and to contract for the purchase of materials therefor within and without the State.

The single contract form used by the petitioner in its business contains its New York city address, conspicuously placed and typed, provides in terms for an immediate conditional purchase of a memorial of specified material and design, and that the title thereto shall remain in the petitioner until the payment of the purchase price in full. This form also carries the words, under the New York city address, " All orders subject to acceptance by

the company;" but the time, the place, or the manner of "acceptance" is not indicated. In the absence of that proof the State Tax Commission could have properly found on the record here that the contracts were accepted in New York city. (*People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346, 348, 349.) The form also contains an added provision that "This contract is not subject to countermand." Spaces are provided at the end for the signatures of the "salesman," and the purchaser. Nothing is found in the contract to indicate that a memorial was to be of foreign material, that it was to be manufactured in another State, or that transportation into New York from another State was required or contemplated. The single reference to a foreign jurisdiction was the one that the petitioner was "a corporation of Marietta, Ga."

The question here is whether the transactions of the petitioner, considered as a whole, so far partook of the nature of interstate commerce as to exempt them from tax in the State of New York, and, therefore, whether the tax complained of constituted such a burden on interstate commerce as to render it invalid. There is no contention that the tax imposed on the sales made by petitioner was different from that imposed on the citizens of New York doing an intrastate business of the same character.

It may not be held that the commerce carried on by the petitioner was not interstate, because it maintained in New York an office and a show room for the display of its merchandise (*Cheney Bros. Co.* v. *Commonwealth of Massachusetts*, 246 U. S. 147); nor that the receipt of payments on account with an order alters the character of commerce otherwise interstate (*Real Silk Hosiery Mills* v. *City of Portland*, 268 U. S. 325); nor that the fact that one agent of the petitioner made the contract of sale, and another made the actual delivery, renders the transactions intrastate (*Crenshaw* v. *State of Arkansas*, 227 U. S. 389); nor that the dealings between the parties were not within the Federal law, because the contract was made in this State. (*Real Silk Hosiery Mills Case, supra.*) It has been held that interstate commerce is a question to be determined on broader considerations than the existence of a technically binding contract, or the time and place where title passed. (*Dozier* v. *Alabama*, 218 U. S. 124.)

And when technical and intricate personal property is sold and delivered in interstate commerce, the character of the commerce is not altered by the incident that it is installed by the technicians of the seller. (*York Manufacturing Co.* v. *Colley*, 247 U. S. 21.) But when lightning rod material is sold in one State and the contract provides for installation in another, a general license fee may be charged in the latter as an occupation tax, the business

of installation being substantial and local in character, and the municipal welfare being involved (*Browning* v. *City of Waycross*, 233 U. S. 16); and so when the materials for a railway signal system were sold for installation in a foreign State, where ditches were to be dug, foundations laid, masts erected, and buildings built and painted, for the support and housing of the mechanism, it was held that the installation was the controlling part of the contract, and the sale of materials secondary. (*General Railway Signal Co.* v. *Virginia*, 246 U. S. 500.) A resident negotiating sales between resident and non-resident merchants of goods in a foreign State, who takes out a license and thereby secures the right to do a general commission business, will not be relieved from the payment of a particular tax generally imposed on those in the same business, on the ground that the sales negotiated were interstate in character, as the tax was not laid on the occupation or business of carrying on interstate commerce. (*Ficklen* v. *Shelby County Taxing District*, 145 U. S. 1.) And so it may be that a contract for sale and installation in a foreign State may have aspects and elements which, if standing alone, would be interstate in their nature, and others which are purely local to the State; but when all are combined and considered together, the things done within a State may give color, bearing and character to the whole, and render the transaction intrastate business. (*Kansas City Structural Steel Co.* v. *Arkansas*, 269 U. S. 148, 151.)

In the present state of the law it is apparent that a conclusion that specified business transactions are or are not interstate commerce, in many instances, may be reached safely only when consideration is given not only to the Federal Constitution, statutes and decisions, but also the police power of the State, the contract between the parties, as well as their practices, the multifarious forms and processes of modern business, and the more-or-less inscrutable intermingling of goods in their movement between one jurisdiction and another. And this difficulty is further accentuated by the weight and significance to be given to one group of elements or another.

Here we have a contract made in New York, between a resident purchaser and a foreign corporation authorized to do business in this State, in precisely the same form as though all of the transactions were intended to take place here, the seller bringing its own goods into the State, breaking the original package itself, and not parting with the title or the possession of the property until substantial work had been performed by the owner in the treatment of the goods and in a performance of the contract, after interstate movement had ceased. And in addition, as already

noted, the contract neither required nor contemplated material of, workmanship in, or transportation from a foreign State; and there is no showing that the purchaser knew or had notice to the contrary of any of these. In view of this record, we do not regard the transactions in question as of such nature and character, when considered as a whole, as to relieve the petitioner from the payment of the tax imposed generally in this State upon the sale of personal property at retail. (*Wiloil Corporation* v. *Pennsylvania*, 294 U. S. 169; *Crew Levick Co.* v. *Pennsylvania*, 245 id. 292; *Banker Bros. Co.* v. *Pennsylvania*, 222 id. 210; *Kansas City Structural Steel Co.* v. *Arkansas*, 269 id. 148, 151.)

The determination should be confirmed, with costs.

HILL, P. J., CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.