In the Matter of the Application of COMPAGNIE GENERALE TRANSATLANTIQUE, Petitioner, for an Order against JOSEPH D. MCGOLDRICK, as Comptroller of the City of New York, Respondent.

First Department, May 27, 1938.

*Herbert K. Stockton* of counsel [*Bernard D. Atwood* with him on the brief; *Haight, Griffin, Deming & Gardner*, attorneys], for the petitioner.

*Robert Granville Burke* of counsel [*Oscar S. Cox, Frank J. Derrick* and *Sol Charles Levine* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the respondent.

*H. Maurice Fridlund* of counsel [*Cletus Keating* and *James R. Roberts* with him on the brief; *Kirlin, Campbell, Hickox, Keating & McGrann*, attorneys], as *amici curiæ*.

*George deForest Lord* of counsel [*Woodson D. Scott* with him on the brief; *Lord, Day & Lord*, attorneys], for the Cunard White Star, Limited, *amicus curiæ*.

*Harold L. Warner* of counsel [*George D. Yeomans*, attorney], for the Williamsburgh Power Plant Corporation, *amicus curiæ*.

O'MALLEY, J. This proceeding to review a determination of the comptroller of the city of New York, assessing a deficiency tax against the petitioner in the sum of $26,955.70, presents generally the questions, (1) whether sales to the petitioner by the Standard Oil Company of New Jersey of certain bunker fuel and Diesel

oil were taxable under Local Law No. 20 of 1934 (New York City Sales Tax Law); and if not, (2) whether they were taxable under the provisions of Local Law No. 25 of 1934 (New York City Personal Property Tax Law).

The petitioner, more commonly known as the French Line, is a French corporation, engaged in the transportation of passengers and freight between the United States and foreign countries. It is authorized to do business in this State, and maintains in New York city a general agency for the United States and Canada for the sale of steamship tickets, the soliciting of freight, the operation of its piers, and the purchasing of supplies for its vessels.

The Standard Oil Company of New Jersey is a Delaware corporation. It, too, has offices in New York. Part of its business is the sale of bunker fuel and Diesel fuel oil. It has no storage tanks or other supplies located in New York city. It maintains at Bayonne, N. J., a large storage, refining and shipping plant. Another plant is at Bayway, N. J.

Bonded Standard bunker " C " fuel oil is refined oil stored in the tanks of the Standard Oil Company, free from the payment of any import duty to the United States, at all times under the supervision of the customs service. A bond to insure payment to the United States of any import duty which would become due if the oil should be used for domestic purposes is required. When delivered to a foreign steamship, a release from the bond is granted.

" Drawback " oil is oil imported from South America and refined at Bayonne or Bayway, N. J., at the plants of the Standard Oil. An import duty is paid thereon, but upon exportation or delivery to foreign steamships, a refund of such duties is made. Save for a few deliveries originating at Staten Island, all deliveries were of oil of these types.

For many years prior to the enactment of the local laws in question, the Standard Oil had agreements with the petitioner for the furnishing of this fuel and Diesel oil to the vessels of the petitioner at their piers in New York city. As certain vessels with a limited draft could dock at Bayonne and there receive the oil, there was a five-cent differential placed on oil delivered in Bayonne or in New York city. It does not appear, however, that any deliveries were ever made to the petitioner in New Jersey.

As refueling of the petitioner's vessels in this city was required to be very expeditious, because of a quick " turn-around," the following procedure was adopted between the petitioner and the Standard Oil. The incoming liner, about forty-eight hours before arrival at the Port of New York, would radio an estimate of the bunker requirements to the petitioner's New York office. There-

upon the petitioner's employee would telephone the Standard Oil shipping clerk in New York city and place the order. It was so timed that the barges on which the oil was transported from New Jersey to the vessel would arrive ten or fifteen minutes after the vessel had completed docking. Thereupon the oil was pumped directly from the barges into the fuel bunkers.

While the contracts between these parties did not specifically require that this oil should come from New Jersey or any other specified locality, the fact is, as already noted, that the only sources of supply for oil of this character in this vicinity controlled by the Standard Oil were its plants in Bayonne and Bayway, N. J. Furthermore, the petitioner knew that this would be the immediate source of the fuel oil and, of course, the petitioner had the right, specifically granted in the contracts, to fuel its vessels at Bayonne, were they of sufficiently shallow draught. Moreover, the contracts required delivery to the steamer.

Certain small deliveries in emergency periods were made by oil borrowed by the Standard from competitors, and two of such deliveries had their origin at Staten Island in New York city, where the competing firm had its oil.

We are of opinion that, with respect at least to the New Jersey originating deliveries mentioned, there could be assessed and collected no tax under the City Sales Tax Law.

As to those shipments originating in New Jersey, they were interstate transactions, and hence not taxable by the State of New York. The city, deriving its power from the State, could have no greater right. Delivery from New Jersey was the " normal, contemplated and followed course " of dealing. (*Western Union Tel. Co.* v. *Foster*, 247 U. S. 105, 113.)

There was here no ending of the interstate transaction, nor had the oil come to rest in this jurisdiction so as to acquire a situs herein. There was no break in transit. Under such circumstances there was an entire and exclusive interstate transaction. (*Minnesota* v. *Blasius*, 290 U. S. 1.)

The oil was immediately, as already stated, pumped from the lighters into the bunkers of the ship and thereupon became a part of the ship. The vessels themselves had no taxable situs here. (*Southern Pacific Co.* v. *Kentucky*, 222 U. S. 63; *Ayer & Lord Co.* v. *Kentucky*, 202 id. 409; *People ex rel. Astor Trust Co.* v. *Stat Tax Commission*, 174 App. Div. 320, 324.)

The situation here is, we think, factually dissimilar from *Wiloil Corporation* v. *Pennsylvania* (294 U. S. 169); *Banker Brothers* v. *Pennsylvania* (222 id. 210), and *Matter of McNeel Marble Co.* v. *Graves* (247 App. Div. 242). In the *Wiloil* case the Supreme Court

of the United States held itself bound by the finding of the Pennsylvania courts, that the goods had come to rest in Pennsylvania before the sale to a resident of Pennsylvania. Here, the shipments in question never came to rest within this jurisdiction. In the *Banker Brothers* case the article which was the subject of sale had likewise been held to have come to rest in the taxing jurisdiction. This also was true in the *McNeel Marble* case. These particular shipments seem, therefore, to fall within the purview of *Matter of National Cash Register Co.* v. *Taylor* (276 N. Y. 208; certiorari denied, 304 U. S. ——), where it was held that the city sales tax had no application.

As to the emergency deliveries originating at Staten Island, the petitioner concedes for the purpose of this case only that the sales tax of $292.83 should apply. Because of this concession the determination under review with respect to such amount of tax will be confirmed. By such confirmation, however, we are expressing no opinion respecting the taxability of such sales.

Finding, as we do, that the New Jersey shipments never came to rest and acquired no situs in this State and that the interstate or foreign commerce was uninterrupted and continuous, the New York City Personal Property Tax Law also did not apply. (*Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 582; *Minnesota* v. *Blasius, supra*, p. 10.)

As to the alleged invalidity of this law and the other objections raised thereto by the petitioner, we do not in this decision consider or decide. The city states in its brief that it does not " press its right in this proceeding " in this respect.

It follows, therefore, that the determination of the comptroller with respect to the deliveries originating in New Jersey should be annulled; otherwise, confirmed as herein indicated.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Determination of the respondent with respect to the deliveries originating in New Jersey unanimously annulled; otherwise, confirmed as indicated in opinion. Settle order on notice.