**FLOWERS, Secretary of State, et al. v. PAN AMERICAN REFINING CORPORATION.**

No. 9152.

Court of Civil Appeals of Texas. Austin.

Oct. 1, 1941.

Rehearing Denied Oct. 22, 1941.

Gerald C. Mann, Atty. Gen., and George W. Barcus, Glenn R. Lewis, Ocie Speer, and Cecil C. Cammack, Asst. Attys. Gen., for appellants.

John P. Bullington and Baker, Botts, Andrews & Wharton, all of Houston, for appellee.

White, Taylor & Chandler and David L. Tisinger, all of Austin, amici curiae.

BLAIR, Justice.

Appellee, Pan American Refining Corporation, sued appellants, the Secretary of State, the State Treasurer, and the Attorney General, to recover certain franchise taxes paid under protest for the years 1938, 1939, and 1940. Judgment was for appellee for $21,652.50, with interest.

The suit and appeal involve the construction of Article 7084, R.S.1925, as amended in 1931, Vernon's Ann.Civ.St. art. 7084, to determine the amount of taxes due by appellee. It provides that: "Every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, shall * * * pay * * * a franchise tax * * * based upon that proportion of the outstanding capital stock, surplus and undivided profits,

plus the amount of outstanding bonds, notes and debentures, other than those maturing in less than a year from date of issue, as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business, which tax shall be computed at the following rates for each One Thousand Dollars ($1,000.00) or fractional part thereof; One Dollar ($1.00) to One Million Dollars ($1,000,000.00), sixty cents (60¢); in excess of One Million Dollars ($1,000,000.00), thirty cents (30¢); provided, that such tax shall not be less than Ten Dollars ($10.00) in the case of any corporation, including those without capital stock."

Appellee is a Delaware corporation engaged solely in the business of refining crude oil and selling the refined products. It maintains an executive office at New York, New York, and branch offices at Texas City, Texas, and Baltimore, Maryland; and had at all times material here a permit to do business in Texas. It owns and operates refineries at Texas City, Texas; Baltimore, Maryland; and through a subsidiary corporation, wholly owned by it, operates a refinery at Savannah, Georgia. The crude oil refined at Texas City moves to the refinery either by pipe line or barge from various oil fields in Texas and Louisiana. Some of these refined products are sold to purchasers in Texas, but most of them are sold to purchasers outside of Texas, which are shipped on instruction given by the New York office to the Texas City office, where they are loaded on vessels by the facilities of the Texas City refinery and are carried to eastern seaboard points for delivery to the purchasers; and payments for such shipments are made to the New York office.

Prior to 1938 appellee, in making its franchise tax returns to the Secretary of State, excluded from its "business done in Texas" all of the receipts from sales of its products refined in Texas but sold under New York contracts outside of Texas and paid for in New York. Each of said reports was filed with and accepted by the Secretary of State without question. In each report appellee stated that it kept a book record showing separately the amount of "business done in Texas" and the amount of "business done outside of Texas."

In the year 1935, the Attorney General rendered an opinion to the State Auditor construing the statute as follows: " * * It is my opinion that the term 'business done in Texas' as used in the Statute has reference to and means business originating in and consummated in the State of Texas and that business originating in the State but consummated outside the State would not be construed as business done in Texas."

As regards appellee's business this opinion of the Attorney General construed the statute in accordance with the reports theretofore filed by appellee and accepted by the Secretary. However, in 1938, the Secretary of State for the first time instructed appellee to show in its franchise tax reports the following: "Show as gross receipts from Texas business all receipts properly allocable to Texas including all interstate receipts derived from business originating in or consummated in Texas. If the business done is purely interstate then no receipts need be shown from Texas business. If any intrastate business is done in Texas, however, only the extrastate business should be shown as business done outside of Texas. By extrastate business is meant business neither originating in nor consummated in Texas."

Accordingly, for the years in question the Secretary of State construed the language, "as the gross receipts from its business done in Texas bears to the total gross receipts of the corporation from its entire business," to require, and demanded, that appellee in computing its franchise tax include as gross receipts from its business done in Texas, receipts from the sale of all petroleum products refined or manufactured in Texas. Such taxes so computed appellee paid under protest, contending that properly construed the statute required it to include as gross receipts from business done in Texas only the gross receipts from sales made to purchasers in Texas, and should not include the gross receipts from sales of products which were refined or manufactured in Texas but sold outside of Texas.

As the result of the demand of the Secretary of State that appellee show the gross receipts of the sales of products refined in Texas and sold outside of Texas as a part of its "business done in Texas," its franchise taxes were increased in the

total sum of the judgment in suit for the years in question.

Appellants contend that since the statute allocates the taxable capital of the corporation based upon its gross receipts "from business done in Texas," it necessarily and properly includes gross receipts from the corporation's intrastate refining business operated solely in Texas, regardless of the place or nature of the sale of such refined products. In support of this contention, appellants offered testimony tending to show that such an allocation of taxable capital could be made under "sound accounting" principles, and they argue that the term "business done in Texas," as used in the statute, is much broader and more comprehensive than the term "sale," and that if the Legislature had intended to include only sales made in Texas, it would have so stated in the statute. Also, in support of the constitutionality of such a construction of the statute, appellants cite the recent case of Ford Motor Co. v. Beauchamp, 308 U.S. 331, 60 S.Ct. 273, 84 L.Ed. 304. The constitutionality of the statute under such a construction is conceded by appellee, but it contends that the statute is not susceptible to such construction, and, if so, that long and continued departmental construction of it, and court decisions preclude its being construed as appellants now contend.

■ Although the statute is probably susceptible of the interpretation now sought to be given it by appellants, we think that we are precluded from doing so because of the other interpretation continuously given to it by the authorities charged with its enforcement, and the decision of this court in the case of Clark v. Atlantic Pipe Line Co., 134 S.W.2d 322, 328, writ refused; wherein we construed the statute as follows: "We hold that the language, 'business done in Texas,' as employed in this statute was intended to mean business begun and completed in Texas, and not business begun in Texas and completed in some other state or foreign nation, or vice versa."

Appellants contend, however, that there has been no such departmental construction of the statute as concerns appellee's business as would render applicable the rule of departmental construction as applied in the Atlantic Pipe Line case. To this contention we cannot agree, because in order to properly construe the statute it must first be determined what is meant by the term, "business done in Texas." The meaning of this term was the subject matter of the opinion of the Attorney General to the State Auditor in 1935, so that he might audit the appropriation made for refunding taxes claimed to have been wrongfully demanded and paid under the statute in question. Our opinion in the Atlantic Pipe Line case dealt directly with and construed the meaning of the term, "business done in Texas." And it is stipulated herein that each annual report filed stated that appellee kept a record showing the amount of "business done in Texas" and the amount of "business done outside of Texas"; and that each report was filed and accepted by the several Secretaries of State, and the amount of the annual franchise tax was calculated solely upon sales made in Texas. Thus the instant case is brought clearly within the rule stated in the Atlantic Pipe Line case as follows: "Conceding, arguendo, that the language of the act is susceptible of the construction that it embraces inter as well as intrastate business, it manifestly is not so clearly so as not to render it open to construction. Departmental construction may therefore become a determining factor. Especially is this true regarding revenue measures, the administration of which is under constant observation of the legislature. See 39 Tex.Jur., pp. 234–238, §§ 125 and 126."

■ The remaining point presented by appellants is that the burden of proof was upon appellee to show what part of its gross receipts, used in computing the franchise taxes for the years involved, were not from "business done in Texas," and that it failed to do so, and therefore was not entitled to recover. This is not tenable because the parties stipulated the exact amount of taxes due if only Texas sales were included, and the exact amount of taxes due if out of state sales of the Texas refined products were to be included as contended for by appellants. The sole purpose of showing the amount of sales outside of Texas was to determine the amount of taxes claimed to be due thereon, and since the amounts of such claimed taxes are stipulated, no necessity existed for showing the amount of such sales.

The judgment of the trial court is affirmed.

Affirmed.