Hart, J.
 

 The first question to be determined is the jurisdictional sufficiency of appellant’s notice of appeal. The Tax Commissioner claims that under Section 5611, General Code (118 Ohio Laws, 353), tire notice of appeal must “set out” a complete copy of the tax assessment and a specification of the errors complained of. On the other hand, the appellant claims that the appeal statute in question is.m
 
 pari materia
 
 with the general appellate sections of our code found in Chapter 1 of Title Y, Part Third, of the General Code of Ohio, and especially Sections 12223-1 to 12223-5, General Code, which are remedial and, therefore, to be liberally construed.
 

 These general appeal statutes make specific provisions for notice of appeal whereby a “court reviews or retries a cause determined by another court,
 
 an administrative officer, tribunal, or
 
 commission.” (Section 12223-1, General Code.) They further provide that ‘ ‘ Every final order, judgment or decree of a court and,
 
 when provided by law,
 
 the final order of any administrative officer, tribunal, or commission may be reviewed as hereinafter provided, unless otherwise provided by law * * * ’ ’ (Section 12223-3, General Code) ; and finally, Section 12223-5, General Code, provides that “The notice of appeal shall designate the order, judgment, or decree appealed from and whether the appeal shall be on questions of law or questions of law
 
 *201
 
 and fact. * é * The failure to designate the type of hearing upon appeal shall not he jurisdictional and the notice of appeal may be amended by the appellate court in the furtherance of justice for good cause shown.” (Italics ours.)
 

 In the opinion of this court, the amendment (118 Ohio Laws, 353) of Section 5611, General Code, after the general appeal statutes above referred to were enacted, does not repeal by implication the latter, but Section 5611, General Code,
 
 provides by law
 
 an appeal from the finding of the Tax Commissioner and supplements the provisions of the general appeal statutes relating to an appeal from the final order of any administrative officer, tribunal, or commission. These appeal statutes are
 
 in pari materia
 
 and, if possible, their provisions should be reconciled. The notice of appeal, while defective, could have been amended on motion without prejudice to the Tax Commissioner. In the opinion of the court, the defect complained of did not divest the Board of Tax Appeals of appellate jurisdiction. The Board of Tax Appeals, in failing to pass upon the motion to dismiss the appeal, in effect, overruled such motion. In thereafter proceeding to consider the merits of the case, the board committed no error. The principles laid down by this court in the cases of
 
 Capital Loan & Savings Co.
 
 v.
 
 Biery,
 
 134 Ohio St., 333, 16 N. E. (2d), 450, and
 
 Couk
 
 v.
 
 Ocean Accident & Guarantee Corp., Ltd.,
 
 138 Ohio St., 110, 33 N. E. (2d), 9, apply. The right of a taxpayer to challenge, by appeal, the validity of a tax levied against him should not be limited or defeated by failure to comply with nonjurisdictional statutory provisions relating to procedure. Defects or omissions because of such failure may be corrected by amendment without prejudice to the taxing authority.
 

 The tax on the sale of the trailers in question was levied pursuant to Section 5546-2, General Code, para
 
 *202
 
 graph 8 .of which exempts “sales which are not within the taxing power of this state under the Constitution of the United States.” Appellant claims that the sales in question were made in interstate commerce, and that the imposition of the tax will burden interstate commerce, contrary to Section 8, Article I of the Constitution of the United States.
 

 It is conceded by all parties that if these sales involve intrastate transactions the tax is properly assessable, but if they involve interstate transactions the tax is not assessable. The sole question then to be determined is the character of the transaction as affecting interstate commerce.
 

 On this subject 47 American Jurisprudence, 209, Section 10, says:
 

 “One of the most baffling problems in connection with the validity of sales tax legislation is the effect thereupon of the commerce clause of the federal Constitution, which provides that ‘the Congress shall have power * * * to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.’ . With respect to the application of this constitutional provision upon state taxation generally, the broad rule is that while a state may not impose taxes directly upon interstate or foreign commerce, it may under certain circumstances impose taxes which may have some incidental effect upon such commerce, but * * * it appears to be impossible
 
 to
 
 reconcile completely the many cases which have considered the application of this principle to particular state sales tax statutes.”
 

 The taxation of property shipped interstate, before its movement begins or after it ends, is not forbidden.
 
 McGoldrick
 
 v.
 
 Berwind-White Coal Mining Co.,
 
 309 U. S., 33, 84 L. Ed., 565, 60 S. Ct., 388, 128 A. L. R., 876;
 
 Bacon
 
 v.
 
 Illinois,
 
 227 U. S., 504, 57 L. Ed., 615, 33 S. Ct., 299;
 
 Minnesota
 
 v.
 
 Blasius,
 
 290 U. S., 1, 78 L. Ed.,
 
 *203
 
 131, 54 S. Ct., 34;
 
 Hope Natural Gas Co.
 
 v.
 
 Hall, Commr.,
 
 274 U. S., 284, 71 L. Ed., 1049, 47 S. Ct., 639;
 
 Memphis Natural Gas Co.
 
 v.
 
 Beeler, Atty. Genl.,
 
 315 U. S., 649, 86 L. Ed., 1690, 62 S. Ct., 857.
 

 The case of
 
 Coe
 
 v.
 
 Errol,
 
 116 U. S., 517, 29 L. Ed., 715, 6 S. Ct., 475, is a leading case on what constitutes interstate commerce and well illustrates the rule applicable here. The question in issue was whether , the state of New Hampshire had the power to tax certain logs which were within it's jurisdiction on tax day. Some of the logs had been cut in the state of Maine and were being floated down the Androscoggin river to Lewiston, Maine, to be milled but were detained in the river at the town of Errol in the state of New Hampshire by low water. Other logs had been cut in New Hampshire and hauled to the river bank at Errol with intent to place them in the same river and float them down to the same destination in the state of Maine as soon as there was sufficient water.
 

 As to the logs cut in Maine, the movement of which was interrupted at Errol by low water, the Supreme Court of New Hampshire held that they had already entered interstate commerce and that because of that fact, the state had no power to tax them so long as they retained that character. On the other hand, the court held that the logs cut in New Hampshire and brought down to the river bank ready to be put into the river were not yet in interstate commerce, even though it was intended likewise to float them down the river to the same destination as the other logs from the state of Maine, and that the former were subject to the taxing power of the state of New Hampshire. The court specifically held that until these logs were put in the river and their movement to another state actually commenced, they had not entered interstate commerce and were, therefore, subject to the taxing power of the state. The judgment of the Supreme Court of New
 
 *204
 
 Hampshire approving the tax was affirmed by the Supreme Court of the United States.
 

 Generally, when a sale involves the delivery of merchandise to a destination outside the state where sold,. the validity of a sales tax levied by such state on such transaction, is denied.
 
 Crew Levick Co.
 
 v.
 
 Pennsylvania,
 
 245 U. S., 292, 62 L. Ed., 295, 38 S. Ct., 126;
 
 J. D. Adams Mfg. Co.
 
 v.
 
 Storen,
 
 304 U. S., 307, 82 L. Ed., 1365, 58 S. Ct., 913, 117 A. L. R., 429. See, also,
 
 United States
 
 v.
 
 Tucker,
 
 188 F., 741.
 

 On the other hand, it is generally held that a sales tax may be applied to sales of merchandise, made on orders accepted within but received from purchasers residing without the taxing state, by a seller maintaining a place of business within the taxing state, provided delivery is made, not to an interstate carrier for transportation beyond the state, but to the purchaser who comes within the state to close the transaction and to accept delivery. See
 
 In re Conecuh Pine Lumber & Mfg. Co.,
 
 180 F., 249;
 
 Coe
 
 v.
 
 Errol, supra; Bacon
 
 v.
 
 Illinois, supra; Federal Compress & Warehouse Co.
 
 v.
 
 McLean, Sheriff, 291
 
 U. S., 17, 78 L. Ed., 622, 54 S. Ct., 267.
 

 “Sales completed entirely within a state are not transactions in interstate commerce; and this rule has been applied to a completed contract of sale between residents of a state and a contract between citizens of different states, when the contract is made and delivery accepted in the state where the property is situated, although the buyer intends to ship the property outside the state.” 15 Corpus Juris Secundum, 300, Section 26, citing
 
 In re Conecuh Pine Lumber & Mfg. Co., supra; Brunner
 
 v.
 
 Mobile-Gulfport Lumber Co.,
 
 188 Ala., 248, 66 So., 438;
 
 Department of Treasury of Indiana
 
 v.
 
 Wood Preserving Corp.,
 
 313 U. S., 62, 67, 85 L. Ed., 1188, 1193, 61 S. Ct., 885, 888.
 

 
 *205
 
 Thus, interstate commerce is not unconstitutionally burdened by tbe application of a sales tax upon tbe retail sale of tangible personal property made within the state when such tax is applied to sales of coal at a mine in the taxing state to purchasers from another state who took delivery in their own trucks and immediately thereafter, in accordance with their original intent, drove the trucks to the other state.
 
 State Board of Equalization
 
 v.
 
 Blind Bull Coal Co.,
 
 55 Wyo., 438, 101 P. (2d), 70.
 

 In
 
 McGoldrick, Comp.,
 
 v.
 
 Compagnie Generale Transatlantique,
 
 309 U. S., 430, 84 L. Ed., 849, 60 S. Ct., 670, New York City imposed a sales tax on the sale of fuel oil to a French corporation which owned and operated vessels between New York City, France and other foreign countries, but maintained a business office in New York City, where the French corporation purchased fuel oil for consumption in the operation of its vessels, from a New Jersey corporation which also maintained an office and did business in New York City. The contract was negotiated and signed in New York City for the sale to the French corporation of its requirements of fuel oil,' deliverable alongside the purchaser’s vessels in New York harbor by barges bringing the oil from storage tanks in .New Jersey. New York City claimed that the sale and delivery of the oil took place in the city before' transportation in foreign commerce began, and that the transaction was subject to its sales tax. The appellate division of the New York Supreme Court held that the taxing statute under these circumstances infringed .upon interstate commerce (254 App. Div., 237, 4 N. Y. Supp. [2d], 661). The Court of Appeals affirmed (279 N. Y., 192, 18 N. E. [2d], 828), on the single ground that the tax was unconstitutional by reason of its effect on interstate commerce. The Supreme Court of the United. States held that "so far as the validity of the tax with
 
 *206
 
 respect to the interstate commerce is- concerned, our. decision sustaining it in the
 
 Berwind-White Coal Mining Company case
 
 is controlling, and the judgment must be reversed * *
 

 The late case of
 
 Department of Treasury of Indiana
 
 v.
 
 Wood Preserving Corp., supra
 
 (April, 1941), has close parallels, both in facts and in legal implications, to the case at bar. In that case, the validity of the Jndiana gross income tax law was challenged. The Wood Preserving Corporation, respondent, brought suit to recover taxes, collected from it by the state of Indiana, on the, ground that they were invalid under the Federal Constitution as laid upon income received outside the state, and as constituting an unlawful burden upon interstate commerce. The corporation, having its principal place of business at Pittsburgh, Pennsylvania, but with an office at Marietta, Ohio, was engaged in the business of treating railroad ties by creosoting them, and also in the business of purchasing ties and selling them to railroads with whom it had contracts for tie treatment. The taxes in question were laid upon the corporation’s gross receipts from the sale of ties to the Baltimore & Ohio Bailroad Company in the state of Indiana in accordance with-certain contracts. One contract provided for the sale of raw ties by the corporation to the Baltimore & Ohio Railroad Company, delivered f. o. b. cars on the railroad tracks, while a supplemental contract required that all such ties delivered to the railroad in Indiana should be shipped to the plant of the corporation at Finney, Ohio, for treatment.
 

 The further course of business was as follows: Requisitions for ties were issued from the railroad company’s office at Baltimore and were accepted by the corporation at its office in Marietta by telephone or mail. The corporation then procured the ties from local producers in Indiana through communications by
 
 *207
 
 telephone or mail from its Marietta office. The Indiana vendors delivered the ties at loading points on the railroad in Indiana. When the ties were ready, an inspector for the railroad company and the corporation’s agent met at the loading point in Indiana, the ties were examined and those accepted by the inspector were loaded on freight cars furnished by the railroad at the loading point. The inspection and loading were simultaneous operations. The corporation paid the Indiana producers only for such ties as were accepted. The corporation’s agent made out bills of lading with the corporation named as consignor and the railroad’s chief engineer of maintenance at Finney, Ohio, as consignee, and the ties were carried from the Indiana loading points to Finney for treatment. The corporation paid no freight to the railroad company for the transportation. The corporation’s office at Marietta mailed weekly invoices to the railroad company’s office at Baltimore for the ties sold and delivered to the railroad company, and monthly reports of such invoices were made to the corporation’s home office at Pittsburgh. The payments for ties so sold from points in Indiana were made by the railroad company to the corporation’s main office at Pittsburgh.
 

 The taxes in question were laid by the Indiana taxing authorities on the gross receipts which the corporation derived from the sale of the untreated ties pursuant to an Indiana statute providing for a tax upon gross income “derived from sources within the state of Indiana” of all nonresident persons and corporations. The sales receipts did not include charges for the creosoting treatment, these being separatély billed to the railroad company when the' treatment whs completed.
 

 The Supreme Court, speaking through Chief Justice Hughes in a unanimous opinion, said:
 

 “Further, as the sole subject of the challenged tax
 
 *208
 
 is the income derived .from respondent’s sales to the railroad company there is no occasion for apportionment. The creosoting operations in Ohio, and the income derived from them, were not involved. And the fact that the ties which were sold to the railroad company were purchased by respondent through orders given to the Indiana producers from respondent’s Marietta office cannot affect the authority of Indiana to tax the receipts from intrastate activities of respondent in its dealings with the railroad company. * * * [Citations omitted.]
 

 “As to these dealings, it appears that respondent received in Indiana the ties it purchased from the local producers and that respondent sold and delivered these ties in Indiana to the railroad company. The fact that the delivery by the producers to respondent and respondent’s delivery to the railroad -company took place at the same time is not important. Respondent was in Indiana acting through its agent at the designated points on the railroad line. The railroad company was at the same points represented by its inspector. The ties brought there by the producers were then examined and those found by the inspector.to be in accordance with specifications were accepted. In these transactions, respondent through its agent at once accepted from its vendors the ties which the railroad company found satisfactory and then and there sold and delivered these ties to the railroad company. These were local transactions, — sales and deliveries of particular ties by respondent to the railroad company in Indiana. The transactions were none the less intrastate activities because the ties thus sold and delivered were forthwith loaded on the railroad cars to go to Ohio for treatment. The contract providing for that treatment called for the treatment of ties to be delivered by the railroad company at the Ohio plant, and the ties bought by the railroad company in Indiana, as
 
 *209
 
 above stated, wer.e transported and delivered by the railroad company to that treatment plant. Respondent did not pay the freight for that transportation and the circumstance that the billing was in its name as consignor is not of consequence in the light of the facts showing the completed delivery to the railroad company in Indiana. See
 
 Superior Oil Co.
 
 v.
 
 Mississippi,
 
 280 U. S., 390 [74 L. Ed., 504, 50 S. Ct., 169].
 

 “We find no ground for saying that in taxing the receipts from these local transactions Indiana has exceeded its constitutional authority by taxing interstate commerce or discriminating against it.”
 

 “* * * when the commerce begins is determined, not,by the character of the commodity, nor by the intention of the owner to transfer it to another state for sale, nor by his preparation of it for transportation, but by its actual delivery to a common carrier for transportation, or the actual commencement of its transfer to another state.” 7 Ohio Jurisprudence, 726, Section 24;
 
 In re Greene,
 
 52 F., 104;
 
 Hammer
 
 v.
 
 Dagenhart,
 
 247 U. S., 251, 272, 62 L. Ed., 1101, 1105 and 1106, 38 S. Ct., 529, Ann. Cas. 1918E., 724, 3 A. L. R., 649; 10 Cincinnati Law Review, 351, 353, 357; 2 Ohio State Law Journal, 260.
 

 The change of possession from seller to purchaser is the taxable event regardless of the time and place of passing title to the merchandise in question.
 
 McGoldrick, Comp.,
 
 v.
 
 Berwind-White Coal Mining Co., supra.
 

 Here the orders for the trailers were accepted and the contract of sale completed in Ohio. The sale itself was completed upon payment of the balance of the-purchase price or its equivalent by the purchaser and the delivery of the trailer to him. The transaction was wholly completed before there was any transportation or any movement of the trailer in interstate commerce. The mere fact that both seller and purchaser contemplated that after the completion of the transaction the
 
 *210
 
 later would move it out of Ohio to his residence in another state does not make the sale an interstate transaction.
 
 Minnesota
 
 v.
 
 Blasius, supra; McGoldrick, Comp.,
 
 v.
 
 Berwind-White Coal Mining Co., supra; Graybar Electric Co.
 
 v.
 
 Curry, Commr.,
 
 238 Ala., 116, 189 So., 186, affirmed 308 U. S., 513, 84 L. Ed., 437, 60 S. Ct., 139.
 

 There is no adequate basis for distinguishing the present tax laid on the sale and delivery of goods before they enter an interstate movement, from the general property tax which may be levied by this state against owners of property found in the state on taxing date, even though there be an intention to transport such property the next day into a foreign jurisdiction, the validity of which latter form of taxation, under the authorities, must be conceded. The situs of the property in this state fixes its status for taxation in either event.
 
 Brown
 
 v.
 
 Houston, Collector,
 
 114 U. S., 622, 29 L. Ed., 257, 5 S. Ct., 1091;
 
 Coe
 
 v.
 
 Errol, supra; Pittsburgh & S. Coal Co.
 
 v.
 
 Bates,
 
 156 U. S., 577, 39 L. Ed., 538, 15 S. Ct., 415;
 
 American Steel & Wire Co.
 
 v.
 
 Speed,
 
 192 U. S., 500, 520, 48 L. Ed., 538, 546, 24 S. Ct., 365;
 
 General Oil Co.
 
 v.
 
 Crain, Insp.,
 
 209 U. S., 211, 52 L. Ed., 754, 28 S. Ct., 475;
 
 Bacon
 
 v.
 
 Illinois, supra.
 

 If trailers situated as those in the present case became, before their removal from Ohio, subject to a state property tax as against the purchasers and owners, transfer of possession of the trailers to them upon sale before being placed in transit to another state, makes such trailers equally subject to a sales tax.
 

 While the Ohio sales tax must be collected by the vendor, it is charged against the 'purchaser who, in fact, pays the táx. 'To-hoM'the'transaction in this casé free from a sales tax would, uhdér similar circumstances, operate discriminatingly against a purchaser of trailers residing in this.state; Such a result should not obtain, and the commerce clause of the Constitution does not require it.
 

 
 *211
 
 The decision of the Board of Tax Appeals is affirmed.
 

 Decision affirmed.
 

 . Weygandt, C. J., Matthias, Zimmerman, Bell and Williams, JJ., concur.