

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

July 14, 1975

The Honorable Bob Bullock
Comptroller of Public Accounts
Lyndon B. Johnson
State Office Building
Austin, Texas 78701

Opinion No. H- 640

Re:  Whether a sale by a gas
producer to an interstate
transmission company in
the State of Texas pro-
duces receipts from
business done in Texas.

Dear Mr. Bullock:

You have requested our opinion regarding the computation of franchise taxes on gas producers within Texas. Your request concerns the effect of sales from such producers to interstate pipeline companies. You note in your letter and we assume for the purposes of this decision that:

> Title to and possession of the products purchased
> by these companies pass to them within the State
> of Texas at either the well head or plant site, and
> all risk of loss is thereafter the responsibility of
> the purchaser.

You have asked two questions concerning the above stated facts:

> 1.  Do  the Texas producers have receipts from
> business done in Texas on these sales after May 1,
> 1970?

> 2.  Would the Texas producers have receipts from
> business done in Texas prior to the amendment of
> article 12.02(1)(b)(i) of the Texas Franchise Tax Act
> effective May 1, 1970, on these sales?

Articles 12.01, et seq., Taxation-General, levy a franchise tax on domestic and foreign corporations for the privilege of doing business in the  state.

Calvert v. Capital Southwest Corporation, 441 S. W. 2d 247 (Tex. Civ.
App. --Austin 1969, writ ref'd. , n. r. e. ) appeal dismissed, 397 U. S.
321.   Article 12. 02(1)(a) establishes an allocation formula under which
that portion of a corporation's entire taxable capital which is to be
taxed by the State is determined on the basis of the "percentage rela-
tionship which the gross receipts from its business done in Texas bear
to the total gross receipts . . . from its entire business." Article
12. 02(1)(b) provides in part:

> For the purpose of this Article, the term 'gross
> receipts from its business done in Texas' shall
> include:
>
> > (i)  Sales of tangible personal property
> > when the property is delivered or
> > shipped to a purchaser within this State,
> > regardless of the F. O. B. point or other
> > conditions of the sale . . .

Prior to its 1969 amendment, article 12. 02 provided in place of subsec-
tion (i) above:

> Sales of tangible personal property located within
> Texas at the time of the receipt of or appropriation
> to the orders where shipment is made to points
> within this State . . .

Acts 1959, 56th Leg., 3rd C. S., ch. 1, p. 187.

The 1969 amendment to article 12. 02 extended the definition of "business
done in Texas" to include interstate sales which involve delivery to the
purchaser at a point in Texas, Attorney General Opinions M-829 (1971),
M-642 (1970), as well as any sale "when the property is delivered or
shipped to a purchaser within this State." Thus under article 12. 02 prior
to its 1969 amendment a sale did not constitute "business done in Texas"
where it involved an out-of-state shipment, whereas the present article 12. 02
includes within the term "business done in Texas" those sales in which the
purchaser takes delivery in Texas regardless of whether the sale involves
an out-of-state shipment. Attorney General Opinion M-829 (1971) was

decided after that amendment but we believe the facts given in that opinion were insufficient to support a determination whether the sale involved a delivery in Texas. However, under article 12.02 both prior to and after its 1969 amendment, as well as under its predecessor, article 7084, V.T.C.S., a sale constituted business done in Texas when the shipment involved in the particular sale was from one point in Texas to another, that is, an intrastate sale. Humble Oil & Refining Co. v. Calvert, 414 S.W.2d 172 (Tex. Sup. 1967); Ramsey v. Investors Diversified Services, 248 S.W.2d 263 (Tex. Civ. App. -- Austin 1952, writ ref'd., n. r. e.); Flowers v. Pan American Refining Corporation, 154 S.W.2d 982 (Tex. Civ. App. --Austin 1941, writ ref'd.); Clark v. Atlantic Pipe Line Co., 134 S.W.2d 322 (Tex. Civ. App. --Austin 1939, writ ref'd.); Attorney General Opinions M-829 (1971), M-642 (1970), WW-1503 (1962). Since we believe your request involves such intrastate sales, in our opinion they constituted "business done in Texas" both before and after the 1969 amendment to article 12.02.

Your office has informed us that in a 1971 ruling the Comptroller held these sales not to constitute "business done in Texas." That ruling cites no authority for its conclusion. See, Letter of August 4, 1971, from Robert S. Calvert to Lee Hill, Chairman, Tax Advisory Committee, Texas Mid-Continent Oil & Gas Association. We have given careful consideration to the arguments presented in the briefs submitted to the Comptroller at that time and to this office regarding this opinion. These arguments may be summarized as follows: (1) In the 1969 amendment to article 12.02 the Legislature did not intend to change the law with respect to "interstate origin sales," that is, sales of property originating in Texas and delivered or shipped out-of-state. (2) The cases of Clark v. Atlantic Pipe Line Co., supra, and Flowers v. Pan American Refining Corporation, supra, as well as prior Attorney General Opinions, would classify these sales as not constituting "business done in Texas." (3) An ultimate destination test should be followed to avoid duplicative taxation. (4) As the administrative construction of article 12.02, the Comptroller's 1971 ruling should not be disturbed absent clear statutory authorization.

The 1969 amendment to article 12.02 altered its language from "where shipment is made to points within this State" to "when the property is delivered or shipped to a purchaser within this State." It is well settled

that the best expression of legislative intent is the words of a statute. Calvert v. British-American Oil Producing Co., 397 S.W. 2d 839 (Tex. Sup. 1965); Empire Gas & Fuel Co. v. State, 47 S.W. 2d 265 (Tex. Sup. 1932); City of Irving v. Dallas County Flood Control District, 377 S.W. 2d 215 (Tex. Civ. App. --Tyler 1964); rev'd. on other grounds, 383 S.W. 2d 571 (Tex. Sup. 1964); State v. City of Gladewater, 242 S.W. 2d 650 (Tex. Civ. App. --Texarkana 1951, writ ref'd.). While the 1969 amendment to article 12.02 extended the definition of "business done in Texas" to include interstate sales with a Texas destination, the amendment also made clear that sales with a Texas delivery to the purchaser constitute "business done in Texas." However, we do not believe the 1969 amendment had any effect upon the question before us, for the instant sales do not in our view, involve either a shipment or a delivery to a point outside the State.

In Clark v. Atlantic Pipe Line Company, supra, the court held that, for the purposes of a pipeline company's franchise taxes, its business of transporting oil did not constitute "business done in Texas," for while the company's activities were entirely intrastate, they were a part of the interstate transportation of the oil. In reaching its decision, the court acknowledged that the statute, article 7084, was susceptible to a different construction and exclusively based its holding on what was viewed as the requirements of the commerce clause of the Federal Constitution. The court's commerce clause rationale arguably may remain viable as applied to the case before it, that of a common carrier involved in the interstate transportation of oil. However, it may not be generally applied to other situations, for a state may include receipts from interstate sales in a fairly apportioned tax. Matson Navigation Co. v. State Board of Equalization of California, 297 U.S. 441 (1936); Chassaniol v. City of Greenwood, 291 U.S. 584 (1934); International Shoe Company v. Shartel, 279 U.S. 429 (1929); Underwood Typewriter Company v. Chamberlain, 254 U.S. 113 (1920); American Manufacturing Company v. City of St. Louis, 250 U.S. 459 (1919); United States Glue Company v. Town of Oak Creek, 247 U.S. 321 (1918); Baldwin Co. v. Glander, 70 N.E. 2d 885 (Ohio 1947); Corn v. Fort, 95 S.W. 2d 620 (Tenn. 1936).

While the Clark case did not involve a sale, it was followed in Flowers v. Pan American Refining Corporation, supra, where sales of oil to an out-of-state purchaser which apparently involved out-of-state deliveries

were held not to be "business done in Texas."  These cases were followed in Attorney General Opinion WW-1503 (1962) concerning sales to an out-of-state purchaser involving shipments to points outside the State. While the 1959 codification and the 1969 amendment of article 12.02 may affect the holdings of these cases, even applying their tests to your question, we believe the instant sales constitute "business done in Texas."

The court in Flowers stated:

> 'business done in Texas' . . . mean[s] business
> begun and completed in Texas, and not business
> begun in Texas and completed in some other
> state or foreign nation, or vice versa.
> 154 S.W.2d at 984

At the time of the Flowers case there was no statutory definition, but the definition enacted in 1959 seems to have codified the ruling, providing, "sales . . . where shipment is made to points within this State."  Similarly, the court in Clark stated "business done in Texas' . . . means intrastate business."  Thus, "business done in Texas" has always included intrastate business, or in the case of sales, intrastate sales.

In our opinion the sales of gas involved in your request are intrastate sales for purposes of franchise taxation.

Cases holding sales followed by shipment out-of-state to constitute intrastate sales are: State Tax Commission of Utah v. Pacific States Cast Iron Pipe Co., 372 U.S. 605 (1963); International Harvester Company v. Department of Treasury, 322 U.S. 340 (1944); Department of Treasury of Indiana v. Wood Preserving Corporation, 313 U.S. 62 (1941); Superior Oil Co. v. Mississippi, 280 U.S. 390 (1930); Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 279 U.S. 306 (1929); Excel, Inc. v. Clayton, 152 S.E.2d 171 (N.C. 1967); Superior Coal Company v. Department of Revenue, 123 N.E.2d 713 (Ill. 1954); Ashton Power Wrecker Equipment Co. v. Department of Revenue, 52 N.W.2d 174 (Mich. 1952); Moffat Coal Co. v. Daley, 89 N.E.2d 892 (Ill. 1950); Department of Treasury v. Globe-Bosse-World Furniture Corporation, 46 N.E.2d 830 (Ind. 1943); Trotwood Trailers Inc. v. Evatt, 51 N.E.2d 645 (Ohio 1943); State Board of Equalization v. Blind Bull Coal Company, 101 P.2d 70 (Wyo. 1940);

City of Jacksonville v. Florida Fresh Water Corporation, 247 So. 2d 739 (Dist. Ct. App. --Fla. 1971). See International Harvester Co. v. Evatt, 329 U. S. 416 (1946); McGoldrick v. Berwind-White Coal Mining Co., 309 U. S. 33 (1940); Dallas Gas Co. v. State, 261 S. W. 1063 (Tex. Civ. App. --Austin 1924, writ ref'd.); cf. Phillips Petroleum Co. v. Oklahoma, 340 U. S. 190 (1950); Parker v. Brown, 317 U. S. 341 (1943); El Paso Electric Co. v. Calvert, 385 S. W. 2d 542 (Tex. Civ. App. --Austin 1964, writ ref'd., n. r. e.), appeal dismissed, 382 U. S. 18 (1965).

We are dealing here with franchise taxes on the vendor gas producer. The deliveries involved in these sales are invariably to a point within the State, and, as stated in your request, title to and possession of the products pass at either the well head or plant site. That the gas is further transported outside the State as an incident of a subsequent sale by the pipeline company does not, in our view, affect the classification of the local transaction involved in the sale of gas by the producer as "business done in Texas" under article 12. 02. While the amount of gas sold by the pipeline company in interstate commerce has relevance to the computation of its franchise taxes, it is immaterial to the issue of the producer's franchise taxes. The producer makes no out-of-state delivery or shipment; his sale to the pipeline company is intrastate in all facets and falls within the statutory definition of article 12. 02(1)(b)(i). Thus it is our opinion that such sales are clearly intrastate sales and therefore constituted "business done in Texas" both before and after the 1969 amendment to article 12. 02.

It may also be noted that the franchise tax liability on sales by an oil and gas producer to a purchaser within the state of production was not even a matter of contention in Webb Resources, Inc. v. McCoy, 401 P. 2d 879 (Kan. 1965); Honolulu Oil Corporation v. Franchise Tax Board, 386 P. 2d 40 (Calif. 1963); and Superior Oil Company v. Franchise Tax Board, 386 P. 2d 33 (Calif. 1963). The issue in those cases was, assuming franchise tax liability on the intrastate sales, which allocation formula would be utilized.

We cannot perceive how the classification of these sales as "business done in Texas" can result in duplicative taxation of the producer vendor. Since all facets of these sales take place in Texas, we do not see how another state could classify them as business done therein and thereby or

otherwise tax the producer vendor on the basis of these sales. American Oil Co. v. Neill, 380 U.S. 451 (1965); Skelly Oil Co. v. Commissioner of Taxation, 131 N.W. 2d 632 (Minn. 1964); Standard Oil Co. v. Thoresen, 29 F. 2d 708 (8th Cir. 1928).

We are aware that where the meaning of a statute is doubtful, the construction placed upon it by an officer or agency charged with administering the statute is entitled to great weight. Calvert v. Kadane, 427 S.W. 2d 605 (Tex. Sup. 1968). However, in our view, the determination of the Comptroller in his letter of August 4, 1971, was clearly erroneous and contrary to the clear wording of the statute here in question.

> Departmental practice is important when an administrative agency is confronted with an ambiguous statute, but it affords no basis for practices which are contrary to the plain meaning of statutes. Brown Express, Inc. v. Railroad Commission, 415 S.W. 2d 394, 397 (Tex. Sup. 1967).

Sabine Pilots Association v. Lykes Brothers Steamship, Inc. , 346 S.W. 2d 166 (Tex. Civ. App. --Austin 1961, no writ); Humble Oil & Refining Co. v. State, 158 S.W. 2d 336 (Tex. Civ. App. --Austin 1942, writ ref'd. ). The "plain meaning" of our franchise tax statutes has been consistently held to classify intrastate sales as "business done in Texas." Since we believe that the sales involved in this question are properly classified as intrastate, an administrative ruling which would not so classify such sales should not be followed.

## SUMMARY

Sales of gas by a Texas producer to an interstate pipeline company with delivery and passage of title and possession in Texas, constitute intrastate sales and "business done in Texas" for the purposes of computation of the producer  vendor's franchise taxes under article 12.02, Taxation-General, V. T. C.S.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

p. 2821

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee